FILED

1 | BUCHALTER NEMER
A Professional Corporation
2 | SCOTT, MARK (SBN: 138569)
18400 Von Karman Avenue, Suite 800
3 | Irvine, California 92612-0514
Telephone: (949) 760-1121
4 | Facsimile: (949) 720-0182
Email: mscott@buchalter.com

2014 JAN 28 PM 3: 14

CL...  ...ACT COURT
CL...RAL  ...T OF CALIF.
SANTA ANA

BY

5

6 | Attorneys for Plaintiff
Bank of America, N.A.

7

8 |                 **UNITED STATES DISTRICT COURT**

9 |                 **CENTRAL DISTRICT OF CALIFORNIA**

10 | BANK OF AMERICA, N.A., a          Case No. **CV14-00660 PA (VBKx)**
National Banking
11 | Association,
                                       **COMPLAINT FOR:**
12 |             Plaintiff,
                                       1. **QUIET TITLE;**
13 |     vs.                            2. **VIOLATION OF BUSINESS &**
                                          **PROFESSION CODE SECTION**
14 | STEELE AVIATION, INC., a              **17200;**
Nevada Corporation; NICOLAS        3. **INTENTIONAL INTERFERENCE**
15 | STEELE, an individual also           **WITH PROSPECTIVE**
known as Nick Steele and as           **ECONOMIC ADVANTAGE;**
16 | Nicholas Steele; VIP JET          4. **INTENTIONAL INTERFERENCE**
SERVICES, INC., a Delaware            **WITH CONTRACTUAL**
17 | Corporation also known as            **RELATIONSHIP;**
V.I.P. Jet Services; DEAN          5. **NEGLIGENCE;**
18 | CAMBE, an individual also         6. **DECLARATORY RELIEF;**
known as Dean R. Cambe and          7. **CONVERSION;**
19 | as Dean R. Cambe Sr.,             8. **RECOVERY OF PERSONAL**
                                          **PROPERTY;**
20 |             Defendants.           9. **SLANDER OF TITLE.**

21

22

23

24

25

26

27

28

BUCHALTER NEMER
...

15596260.1

1  Plaintiff Bank of America, N.A. ("BOA") alleges as
2  follows:

### GENERAL ALLEGATIONS

### (Against Each Defendant)

5  **I.   JURISDICTION AND VENUE**

6      1.   The Court has subject matter jurisdiction over
7  this action pursuant to the provisions of Title 28
8  U.S.C. §§ 1332 and 1348.  The parties hereto are
9  citizens of different states and the amount in
10 controversy, exclusive of interest and costs, exceeds
11 $75,000.00.

12     2.   Venue is proper in the United States District
13 Court for the Central District of California pursuant to
14 28 U.S.C. § 1391(b)(2)(3) and 28 U.S.C. § 1391(c).

15 **II. THE PARTIES**

16     3.   BOA is and at all times mentioned herein was a
17 National Banking Association duly organized and existing
18 under the laws of the United States of America and
19 qualified to do business in the State of California.

20     4.   BOA is informed and believes and thereon
21 alleges that Defendant Steele Aviation, Inc. ("Steele
22 Aviation") is and at all times mentioned herein was a
23 corporation organized under the laws of the State of
24 Nevada.  BOA is further informed and believes and
25 thereon alleges that on February 1, 2008 Steele
26 Aviation's qualification to conduct business in the
27 State of California was forfeited, which included the
28 period during which Steele Aviation claims it performed

BUCHALTER NEMER
15596260.1

1  the work that is the subject of its lien as described
2  hereinbelow.  BOA is further informed and believes and
3  thereon alleges that Steele Aviation conducts business
4  out of offices located in the County of Los Angeles in
5  the State of California.

6      5.  BOA is informed and believes and thereon
7  alleges that Defendant Nicolas Steele ("N.Steele") is
8  and at all times relevant hereto was an individual
9  residing in the City of Beverly Hills, County of Los
10 Angeles, in the State of California.  BOA is further
11 informed and believes and thereon alleges that N.Steele
12 is also known as Nick Steele and as Nicholas Steele.
13 N.Steele is the principal of Steele Aviation.

14     6.  BOA is informed and believes and thereon
15 alleges that Defendant VIP Services ("VIP") was a
16 corporation formed under the laws of the State of
17 Delaware doing business in the County of Los Angeles in
18 the State of California.  BOA is further informed and
19 believes and thereon alleges that on October 1, 2013
20 VIP's qualification to conduct business in the State of
21 California was forfeited.  BOA is further informed and
22 believes and thereon alleges that VIP is also known as
23 V.I.P. Jet Services, Inc.

24     7.  BOA is informed and believes and thereon
25 alleges that Defendant Dean Cambe ("Cambe") is and at
26 all times mentioned herein was an individual residing in
27 the County of Los Angeles in the State of California.
28 BOA is further informed and believes and thereon alleges

that Cambe is also known as Dean H. Cambe and as Dean H. Cambe, Sr.  Cambe is the principal of VIP.

**III. BACKGROUND FACTS**

**BOA's Senior Security Interest in The Subject Airplane**

8.   On or about October 24, 2007, the Zaken Corp. ("Zaken") and Tiran Zaken ("T.Zaken") (collectively the "Zaken Parties"), as co-borrowers, executed in favor of BOA a written Commercial Aircraft Note Closed-End (Fixed Rate) (the "Note") which enabled Zaken to purchase a Beech King Air B200 Airplane, Reg. No. N418DN (formerly N209WC) Serial No. BB-1130, including all accessories, log books, attachments and other property related thereto (the "Airplane").  Pursuant thereto, the Zaken Parties jointly and severally agreed to pay BOA the principal sum of $1,276,500.00, plus interest and other expenses, on the terms and conditions set forth therein.

9.   To secure payment of their obligations under the Note, the Zaken Parties provided BOA with a security interest in the Airplane as identified in a written Aircraft Security Agreement (Commercial) (the "Security Agreement").  BOA perfected its security interest in the Airplane by recording the Security Agreement with the Federal Aviation Administration ("FAA") on December 10, 2007.  Attached hereto as Exhibit "1" is a copy of the recorded Security Agreement which reflects BOA's senior security interest in the Airplane.

10.  Pursuant to the Note and the Security Agreement (collectively the "Loan Agreement"), the Zaken Parties, among other things, agreed:

>    (a)  to make timely payments in the amount set forth in the Note;
>
>    (b)  that if the Zaken Parties failed to make any payment when due or committed any other event of default, BOA would have all the rights and remedies of a secured party under the Commercial Code, including but not limited to, the right to take immediate possession of the Airplane.

11.  BOA has performed all covenants, conditions and promises required on its part under the terms of the Loan Agreement.

12.  The Zaken Parties defaulted under the Loan Agreement.  BOA is entitled to immediate possession of the Airplane as a result of, among other things, the loan default.

13.  Pursuant to the Security Agreement, BOA took possession of the Airplane on April 25, 2013.  BOA is attempting to sell the Airplane pursuant to the Loan Agreement and Division 9 of the Commercial Code.  To date, the Airplane has not been sold.

**The Steele Lien And The VIP Lien Which Cloud Title to the Airplane**

14.  On April 25, 2013, Steele Aviation filed a Mechanic's or Materialman's Lien Statement (the "Steele

BUCHALTER NEMER

15596260.1

1 Lien") with the FAA.  The Steele Lien was signed by
2 "Nicolas Steele, President & CEO" on April 23, 2013.
3 The FAA recorded the Steele Lien on May 15, 2013 as
4 Document No. M0007288.  A copy of the Steele Lien is
5 attached hereto as Exhibit "2."

6      15. On April 25, 2013, VIP filed a Mechanic's or
7 Materialman's Lien Statement (the "VIP Lien") with the
8 FAA.  VIP signed the VIP Lien on April 24, 2013.  The
9 FAA recorded the VIP Lien on April 25, 2013 as Document
10 No. M0007289.  A copy of the VIP Lien is attached hereto
11 as Exhibit "3."

12 **The Business Relationship between Steele Aviation And**
13 **Zaken**

14      16. BOA is informed and believes and thereon
15 alleges that on April 13, 2011, Zaken and Steele
16 Aviation entered into a written Aircraft Management
17 Agreement (the "Management Agreement").  A copy of the
18 Management Agreement is attached hereto as Exhibit "4."

19      17. Under the Management Agreement, Steele Aviation
20 and Zaken agreed, among other things, that:

21           (a)  Steele Aviation would exclusively and
22                completely control and manage the Airplane;
23           (b)  Steele Aviation would maintain all records,
24                logs and materials related to the Airplane;
25           (c)  Steele Aviation was authorized to charter
26                or sub-lease the Airplane to third parties
27                and to retain the proceeds thereof without

28

1    remission of any portion to the Zaken
2    Parties;
3         (d)  Steele Aviation was authorized to enter
4              into contracts on Zaken's behalf for the
5              purpose of maintaining the Airplane;
6         (e)  Steele Aviation would provide Zaken with a
7              monthly report and a breakdown.
8        18.  BOA is informed and believes and thereon
9    alleges that on or about the effective date of the
10   Management Agreement, Steele Aviation and N.Steele
11   (collectively the "Steele Parties") took possession of
12   all log books (the "Log Books") for the Airplane.  BOA
13   is further informed and believes that the Log Books
14   entrusted to Steele Aviation and N.Steele were a
15   complete set dating from the beginning of the Airplane's
16   existence.
17       19.  The Zaken Parties and Steele Aviation did not
18   notify BOA of the existence or terms of the Management
19   Agreement until after the dispute which is the subject
20   of this action arose.
21       20.  The Steele Parties claim that from March 2011
22   through April 2013 Zaken did not pay various fees and
23   cost reimbursements to which Steele Aviation was
24   entitled under the Management Agreement.  The Steele
25   Parties further claim that Zaken currently owes Steele
26
27
28

Aviation the sum of $269,507.32 consisting of the following:

|   |   |
|---|---|
| - Hangar Fee Reimbursement | $43,800.00 |
| - Management Fees | $52,000.00 |
| - Maintenance Fee Reimbursement | $99,632.65 |
| - Insurance | $30,213.35 |
| - Crew Reimbursement for Owner Flights | $43,861.32 |
|   | $269,507.32 |

BOA is informed and believes and thereon alleges that the Steele Parties claim that the Zaken Parties never paid any amount to Steele Aviation under the Management Agreement.

21. BOA is informed and believes and thereon alleges that Steele Aviation did not provide Zaken with monthly invoices or a monthly report reflecting accruing charges at or about the time services were performed between March 2011 and April 2013. BOA is further informed and believes and thereon alleges that Steele Aviation did not provide Zaken with required estimates for charges to be incurred and did not obtain Zaken's specific authorization as required for the work and services, if any, allegedly performed by Steele Aviation. BOA is further informed and believes and thereon alleges that Steele Aviation never performed any work or repairs itself for which it seeks reimbursement.

BUCHALTER NEMER

15596260.1

**COMPLAINT**

22. At no time from March 2011 through April 25, 2013 did the Steele Parties ever provide notice to BOA of any accrued but unpaid charges, even though BOA has been the first position lienholder on the Airplane at all times since October 2007.  Instead, Steele Aviation allowed the alleged charges to build up for two (2) years before recording the Steele Lien in the amount of $164,555.00.

23. BOA has informed the Steele Parties that the Steele Lien is improper and has made demand to the Steele Parties to release or withdraw the Steele Lien. The Steele Parties have refused to release the Steele Lien unless payment in the amount of $164,555.00 is paid.

24. Following BOA's recovery of possession of the Airplane in April 2013, BOA discovered that the Log Books were missing.  In November 2013, the Steele Parties turned over possession of some, but not all, of the Log Books to BOA.

25. BOA is informed and believes and thereon alleges that the unaccounted for Log Books (the "Missing Log Books") were delivered to Steele Aviation by Zaken's prior manager of the Airplane in or about April 2011. Thereafter, the Steele Parties were entrusted with the maintenance, custody and control of the Log Books, including the Missing Log Books, pursuant to the terms of the Management Agreement with Zaken.

**The VIP Parties' Relationship to Steele Aviation and The Airplane**

26. BOA is informed and believes and thereon alleges that the Steele Parties and the VIP Parties have had an ongoing business relationship for many years that pre-dates the Management Agreement.  BOA is further informed and believes and thereon alleges that this relationship involved multiple aircraft.

27. The VIP Parties claim that VIP stored the Airplane at its hangar located at the Van Nuys Airport and provided maintenance and service on the Airplane between March 2011 and April 2013.  The VIP Parties further claim that VIP has not been paid any amount in exchange for the claimed work and services in connection with the Airplane.

28. BOA is informed and believes and thereon alleges that VIP has never directly entered into a contract with the Zaken Parties in connection with the Airplane.  BOA is further informed and believes and thereon alleges that VIP did not provide Zaken with monthly invoices or a monthly report reflecting accruing charges at or about the time the alleged work and services benefitting the Airplane were allegedly provided.  BOA is further informed and believes and thereon alleges that VIP did not provide Zaken with estimates for the claimed charges and did not obtain Zaken's specific authorization for work and services that benefited the Airplane as claimed.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
Irvine

**COMPLAINT**

15596260.1

29. At no time between March 2011 and April 25, 2013 did the VIP Parties provide notice to BOA of an intent to provide work or services in connection with the Airplane.  BOA is further informed and believes and thereon alleges that the VIP Parties did not provide notice to BOA of any accrued but unpaid charges until April 2013 even though BOA has been the first position lienholder of record on the Airplane at all times since October 2007.  Instead, the VIP Parties allowed the alleged charges to build up secretly for two (2) years and then filed the VIP Lien in the amount of $82,265.85 on April 25, 2013.

30. BOA is informed and believes and thereon alleges that VIP has received payment for all claimed storage, repair and maintenance charges allegedly incurred in connection with the Airplane, and that the VIP Parties are owed no amount as a result thereof.  BOA is further informed and believes and thereon alleges that the VIP Parties have previously acknowledged their awareness that neither the Zaken Parties nor the Steele Parties owe any amount to VIP in connection with the Airplane.  Nevertheless, the VIP Parties filed the VIP Lien because of Cambe's stated belief that "they'll pay, the banks always pay" and Cambe's stated belief that "I know what I am doing."

31. BOA has made demand upon each of the VIP Parties to release or otherwise withdraw the VIP Lien

**COMPLAINT**

15596260.1

1  with the FAA.  Despite BOA's demands, VIP and Cambe have
2  failed and refused to do so.
3      32.  BOA is informed and believes and thereon
4  alleges that the attempts by the Steele Parties and the
5  VIP Parties to cloud title to the Airplane by filing
6  liens with the FAA seriously diminish the price which
7  BOA could obtain for the Airplane at a sale conducted
8  pursuant to Division 9 of the Commercial Code.  BOA is
9  further informed and believes and thereon alleges that
10 without the Missing Log Books, the sale price for the
11 Airplane will also be diminished.  As a result of the
12 misconduct of Steele Aviation, N.Steele, VIP and Cambe,
13 BOA has been damaged in amount according to proof at
14 trial.

15              **FIRST CLAIM FOR RELIEF**
16          **(Quiet Title Against All Defendants)**
17      33.  BOA repeats and realleges paragraphs 1 through
18 32 above, as though set forth in full.
19      34.  BOA is informed and believes and thereon
20 alleges that Steele Aviation and N.Steele each claim an
21 interest adverse to BOA in the Airplane through the
22 Steele Lien.  BOA seeks to quiet title against the
23 claims of the Steele Parties.  The Steele Lien is
24 without any merit whatsoever and Steele Aviation and
25 N.Steele have no right or interest in the Airplane,
26 including, but not limited to, the Missing Log Books.
27      35.  BOA is informed and believes and thereon
28 alleges that VIP and Cambe each claim an interest

BUCHALTER NEMER

12

**COMPLAINT**

15596260.1

1 | adverse to BOA in the Airplane through the VIP Lien.
2 | BOA seeks to quiet title against the claims of the VIP
3 | Parties.  The VIP Lien is without any merit whatsoever
4 | and VIP and Cambe have no right or interest in either
5 | the Airplane or the Missing Log Books.

6 | 36. BOA seeks to quiet title to the Airplane and an
7 | order declaring that the Steele Lien filed by the Steele
8 | Parties and the VIP Lien filed by the VIP Parties are
9 | ineffective, invalid and without force or effect as a
10 | matter of law and must be removed forthwith.  BOA also
11 | seeks appropriate injunction relief

12 | **SECOND CLAIM FOR RELIEF**
13 | **(Unfair Business Practices Under Section 17200 of the**
14 | **California Business and Professions Code**
15 | **Against Each Defendant)**

16 | 37. BOA repeats and realleges paragraphs 1 through
17 | 32 and 34 through 36 above, as though set forth in full.

18 | 38. On April 25, 2013, VIP, acting by and through
19 | or at the direction of Cambe, filed the VIP Lien with
20 | the FAA.  In the VIP Lien, VIP and Cambe stated that VIP
21 | had furnished and performed work, labor, materials and
22 | hangar rental in the sum of $82,265.85 for which VIP had
23 | not been paid. VIP, acting by and through or at the
24 | direction of Cambe, represented that VIP has a valid
25 | lien against the Airplane.  These representations are
26 | material and false.

27 | 39. BOA is informed and believes and thereon
28 | alleges that the representations made by VIP and Cambe

BUCHALTER NEMER

**COMPLAINT**

15596260.1

1  are false and that the VIP Lien is fraudulent.  The true
2  facts are that VIP has been paid in full, is otherwise
3  owed no amount and does not have a valid claim of lien
4  in connection with the Airplane.

5     40.  BOA is informed and believes and thereon
6  alleges that VIP and Cambe made the misrepresentations
7  in the VIP Lien knowing that VIP's lien claims were
8  improper and without merit.  BOA is further informed and
9  believes and thereon alleges that VIP and Cambe made the
10 misrepresentations with the purpose and intent of
11 causing BOA to make a payment to VIP in exchange for the
12 release or other withdrawal of the bogus VIP Lien.

13    41.  BOA is informed and believes and thereon
14 alleges that VIP and Cambe made the representations with
15 the intent to defraud and to deceive BOA.  VIP and Cambe
16 made the misrepresentations in the lien claim with the
17 intent that BOA rely thereon.

18    42.  On April 25, 2013, Steele Aviation, acting by
19 and through N.Steele, filed the Steele Lien with the
20 FAA.  In the Steele Lien, Steele Aviation and N.Steele
21 stated that Steele Aviation had performed $164,555.00 in
22 work, labor and materials pursuant to the Management
23 Agreement for which Steele Aviation had not been paid.
24 Steele Aviation and N.Steele also represented that
25 Steele Aviation has a valid lien against the Airplane.

26    43.  BOA is informed and believes and thereon
27 alleges that representations made by Steele Aviation and
28 N.Steele were not true.

BUCHALTER NEMER
[illegible]

14

**COMPLAINT**

15596260.1

44. Steele Aviation and N.Steele had no reasonable grounds for believing that the representations were true when made.

45. The truth is that Steele Aviation and N.Steele do not have a valid lien against the Airplane in the amount of $164,555.00. BOA is further informed and believes and thereon alleges that Steele Aviation and N.Steele are not entitled to assert a lien against the Airplane in any amount.

46. Steele Aviation and N.Steele made the misrepresentations with the purpose and intent of causing BOA to make a payment of $164,555.00 to Steele Aviation in exchange for the release or withdrawal of the Steele Lien.

47. The conduct of Steele Aviation, N.Steele, VIP and Cambe as alleged herein constitutes unlawful, unfair, unethical and oppressive and deceptive business practices under Section 17200, et seq. of the California Business and Professions Code.

48. As a direct and proximate result of the Defendants' unfair business practices as described herein, BOA has been deprived of its lawful rights and the value of the Airplane has been adversely impacted.

49. The harm caused by Steele Aviation, N.Steele, VIP and Cambe as alleged hereinabove significantly outweighs the utility, if any, of the Defendants' conduct.

50. The Business and Professions Code authorizes injunctive and restitutionary relief against any person who has engaged or proposes to engage in unfair competition. BOA requests an injunction prohibiting the continued unfair, unlawful and fraudulent business practices of Steele Aviation, N.Steele, VIP and Cambe as alleged hereinabove.

51. As a direct and proximate result of the acts and omissions of Steele Aviation, N.Steele, VIP and Cambe as alleged hereinabove, BOA has suffered and continues to suffer damages in an amount according to proof at trial. In addition, BOA requests that the Court order Steele Aviation and N.Steele to withdraw or release the Steele Lien and to order VIP and Cambe to withdraw or release the VIP Lien.

52. BOA is informed and believes and thereon alleges that the aforementioned acts of Steele Aviation, N.Steele, VIP and Cambe are willful, oppressive and malicious in that these Defendants have engaged in unfair competition with the deliberate intent to injure BOA with a conscious disregard of the rights of BOA. Accordingly, BOA is entitled to an award of punitive damages from Steele Aviation, N.Steele, VIP and Cambe in an amount sufficient to punish them and to deter such future conduct.

53. BOA requests that the Court enter temporary, preliminary and permanent injunctive relief against Steele Aviation, N.Steele, VIP and Cambe to stop the

**COMPLAINT**

BUCHALTER NEMER

15596260.1

unfair practices alleged hereinabove.  Unless these
Defendants are restrained, Steele Aviation, N.Steele,
VIP and Cambe will continue to injure BOA and the
Airplane.

### THIRD CLAIM FOR RELIEF

### (Intentional Interference with Actual and Prospective Economic Advantage Against Each Defendant)

54. BOA repeats and realleges paragraphs 1 through 32, 34 through 36 and 38 through 53 above, as though set forth in full.

55. As alleged hereinabove, the misconduct of Steele Aviation, N.Steele, VIP and Cambe has deprived BOA from maximizing the net proceeds realized from sale of the Airplane pursuant to Division 9 of the Commercial Code.  At the time Steele Aviation, N.Steele, VIP and Cambe took the acts alleged herein, they knew of the harm that their acts would cause to BOA in that Steele Aviation, N.Steele, VIP and Cambe knew or should have known that BOA would attempt to sell the Airplane and that the Defendants' misconduct would likely diminish the sale proceeds.

56. As a direct and proximate result of the intentional conduct of Steele Aviation, N.Steele, VIP and Cambe, BOA has suffered, and continues to suffer, damages in an amount to be proven at trial, which amount exceeds the jurisdictional limit of this Court.

57. The aforementioned acts of Steele Aviation, N.Steele, VIP and Cambe, and each of them, are willful,

BUCHALTER NEMER

15596260.1

1  oppressive and malicious in that Steele Aviation,
2  N.Steele, VIP and Cambe, and each of them, are, among
3  other things, knowingly interfering with BOA's ability
4  to maximize the proceeds from the sale of the Airplane
5  at the sale to be conducted pursuant to Division 9 of
6  the Commercial Code.  BOA is therefore entitled to an
7  award of punitive damages against Steele Aviation,
8  N.Steele, VIP and Cambe, and each of them, in an amount
9  sufficient to punish the Defendants and to deter future
10  conduct of this type.

**FOURTH CLAIM FOR RELIEF**

**(Intentional Interference with Contractual
Relationship Against Each Defendant)**

14      58.  BOA repeats and realleges paragraphs 1 through
15  32, 34 through 36, 38 through 53 and 55 through 57
16  above, as though set forth in full.

17      59.  As alleged hereinabove, the misconduct of
18  Steele Aviation, N.Steele, VIP and Cambe has deprived
19  BOA from maximizing the net proceeds realized from sale
20  of the Airplane pursuant to Division 9 of the Commercial
21  Code and the Loan Agreement with Zaken and T.Zaken.  At
22  the time Steele Aviation, N.Steele, VIP and Cambe took
23  the acts alleged herein, they knew of the harm that
24  their acts would cause to BOA in that Steele Aviation,
25  N.Steele, VIP and Cambe knew or should have known that
26  BOA would attempt to sell the Airplane and that the
27  Defendants' misconduct would likely diminish the sale

28

BUCHALTER NEMER
ATTORNEYS AT LAW

COMPLAINT

15596260.1

proceeds and would, as a result, interfere with BOA's contract with Zaken and T.Zaken.

60. As a direct and proximate result of intentional conduct by Steele Aviation, N.Steele, VIP and Cambe, BOA has suffered, and continues to suffer, damages in an amount to be proven at trial, which amount exceeds the jurisdictional limit of this Court.

61. The aforementioned acts of Steele Aviation, N.Steele, VIP and Cambe, and each of them, are willful, oppressive and malicious in that the Defendants, among other things, are knowingly interfering with BOA's rights under the Loan Agreement and the Commercial Code. BOA is therefore entitled to an award of punitive and/or exemplary damages against the Defendants, and each of them, in an amount sufficient to punish Steele Aviation, N.Steele, VIP and Cambe, and each of them, and to deter future conduct of this type.

## FIFTH CLAIM FOR RELIEF
### (Negligence Against Each Defendant)

62. BOA repeats and realleges paragraphs 1 through 32, 34 through 36, 38 through 53, 55 through 57 and 59 through 61 above, as though set forth in full.

63. Pursuant to the Management Agreement, Steele Aviation and N.Steele were required to maintain all records and Log Books for the Airplane, including the Missing Log Books. In addition, Steele Aviation had a duty to keep the Airplane free from any liens.

64. BOA is informed and believes and thereon alleges that Steele Aviation and N.Steele took possession of the Log Books, including the Missing Log Books, in or about April 2011.

65. Steele Aviation and N.Steele claim that the Missing Log Books cannot be located.  They also contend that to the extent that Steele Aviation and N.Steele ever had possession of the Missing Log Books, VIP and Cambe gained access to the Airplane and improperly removed, hid or lost the Missing Log Books.

66. Steele Aviation, N.Steele, VIP and Cambe each owed a duty to those persons who had an interest in the Airplane, including any secured lender, to properly maintain and preserve the Log Books, including the Missing Log Books.  BOA is informed and believes and thereon alleges that Steele Aviation, N.Steele, VIP and Cambe failed to exercise reasonable care in maintaining and preserving the Missing Log Books, resulting in the loss thereof.

67. As a result, Steele Aviation, N.Steele, VIP and Cambe, and each of them, breached their duty of care owed to BOA with respect to the Missing Log Books.  BOA is informed and believes and thereon alleges that Steele Aviation, N.Steele, VIP and Cambe are liable to BOA for their negligence as a result thereof.

68. BOA is informed and believes and thereon alleges that Steele Aviation and N.Steele breached a duty of care owed to all those who have an interest in

COMPLAINT

15596260.1

the Airplane, including the secured lender, by allowing
VIP to file the VIP Lien and by failing to cause the
removal thereof.

69. As a proximate result of the negligence of
Steele Aviation, N.Steele, VIP and Cambe, BOA has been
damagesd in an amount according to proof at trial.

### SIXTH CLAIM FOR RELIEF

### (Declaratory Relief Against Each Defendant)

70. BOA repeats and realleges paragraphs 1 through
32, 34 through 36, 38 through 53, 55 through 57, 59
through 61 and 63 through 69 above, as though set forth
in full.

71. In the context of the foregoing, an actual
controversy now exists between BOA and the Defendants,
and each of them, in that BOA contends, and is informed
and believes and based thereon alleges, that the
Defendants' deny the following:

       (a)  That BOA is entitled to immediate
            possession of the Missing Log Books and
            that Steele Aviation, N.Steele, VIP and
            Cambe have no right to the possession
            thereof;

       (b)  That the Steele Lien filed against the
            Airplane by Steele Aviation is ineffective,
            invalid and without force and effect and
            should be withdrawn, terminated or
            otherwise released on a forthwith basis.

1          (c)   That the VIP Lien filed against the

2                 Airplane by VIP and Cambe is ineffective,

3                 invalid and without force and effect and

4                 should be withdrawn, terminated or

5                 otherwise released on a forthwith basis.

6     72. BOA seeks a declaration by this Court as to the

7 respective rights, duties and obligations of the parties

8 herein in light of the aforementioned. Such a

9 declaration is necessary and appropriate since in the

10 absence thereof all of the parties hereto will be acting

11 at their substantial peril in pursuit of their

12 conflicting interpretations and contentions.

13                  **SEVENTH CLAIM FOR RELIEF**

14           **(Conversion Against Each Defendant)**

15     73. BOA repeats and realleges paragraphs 1 through

16 32, 34 through 36, 38 through 53, 55 through 57, 59

17 through 61, 63 through 69 and 71 through 72 above, as

18 though set forth in full.

19     74. At all times mentioned herein, BOA did and does

20 have an absolute right to immediate possession of the

21 Missing Log Books. Despite BOA's demands, Steele

22 Aviation, N.Steele, VIP and Cambe have failed and

23 refused to deliver possession of the Missing Log Books

24 to BOA. As a result, the Missing Log Books are being

25 wrongfully detained by these Defendants.

26     75. As a proximate result of the actions of Steele

27 Aviation, N.Steele, VIP and Cambe, and each of them, BOA

28 has been and will be deprived of possession of the

1  Missing Log Books, all to BOA's damage in a sum as yet
2  unascertained.  BOA has been and will be required to
3  exert time, effort and expense in pursuit of its
4  converted Missing Log Books, all to BOA's further
5  damage.

6      76.  The acts of Steele Aviation, N.Steele, VIP and
7  Cambe, and each of them, are malicious, willful and
8  oppressive in that they are intended to cause injury to
9  BOA or were done with a conscious disregard of BOA's
10  rights.  BOA is informed and believes and thereon
11  alleges that Steele Aviation, N.Steele, VIP and Cambe,
12  and each of them, have intentionally failed and refused
13  to turn over possession of the Missing Log Books to BOA
14  without justification.  Accordingly, BOA is entitled to
15  an award of punitive damages according to proof at
16  trial.

17              **EIGHTH CLAIM FOR RELIEF**
18            **(Recovery of Personal Property**
19               **Against Each Defendant)**

20      77.  BOA repeats and realleges paragraphs 1 through
21  32, 34 through 36, 38 through 53, 55 through 57, 59
22  through 61, 63 through 69, 71 through 72 and 74 through
23  76 above, as though set forth in full.

24      78.  BOA is informed and believes and thereon
25  alleges that each of the Defendants claims some right,
26  title or interest in the Missing Log Books, the exact
27  nature of which is unknown to BOA.  BOA alleges that
28  such claims, claims of lien, right, title or interest,

1  if any, are subsequent to, subject to and junior to
2  BOA's interest in and claim to the Missing Log Books.

3      79. By virtue of the Loan Agreement, BOA has all of
4  the rights and remedies of a secured party under the
5  Commercial Code, including, without limitation, the
6  right to immediate possession of the Missing Log Books
7  and the right to request the assistance of the Court to
8  enforce BOA's rights.

9      80. Although BOA has demanded that Steele Aviation,
10  N.Steele, VIP and Cambe deliver possession of the
11  Missing Log Books to BOA and hereby reiterates that
12  demand, these Defendants have failed and refused to do
13  so.  BOA is informed and believes and thereon alleges
14  that the Missing Log Books are being wrongfully detained
15  by the Defendants.  According to the best knowledge,
16  information and belief of BOA, these Defendants have
17  failed and refused to deliver the Missing Log Books to
18  BOA in order to benefit themselves to the detriment of
19  BOA.  The Missing Log Books have not been taken for tax
20  assessment or fine pursuant to statute or seized under
21  execution against the property of BOA.

22                 **NINTH CLAIM FOR RELIEF**

23        **(Slander of Title Against Each Defendant)**

24      81. BOA repeats and realleges paragraphs 1 through
25  32, 34 through 36, 38 through 53, 55 through 57, 59
26  through 61, 63 through 69, 71 through 72, 74 through 76
27  and 78 through 80 above, as though set forth in full.

28

1    82. On or about April 25, 2013, Steele Aviation,
2 acting by and through N.Steele, willfully, wrongfully,
3 without justification and without privilege filed the
4 Steele Lien against the Airplane with the FAA.  This
5 lien claim is false and inaccurate.  This lien claim has
6 also caused doubt to be cast on the BOA lien covering
7 the Airplane and the ability of a buyer under a sale
8 conducted under Division 9 of the Commercial Code to
9 purchase title to the Airplane.

10    83. On or about April 25, 2013, VIP, acting by and
11 at the direction of Cambe, willfully, wrongfully,
12 without justification and without privilege filed the
13 Steele Lien with the FAA against the Airplane.  This
14 lien claim is false and inaccurate.  This lien claim has
15 also caused doubt to be cast on the BOA lien covering
16 the Airplane and the ability of a buyer under a sale
17 conducted under Division 9 of the Commercial Code to
18 purchase title to the Airplane.

19    84. The publication of the Steele Lien and the VIP
20 Lien has directly impaired the salability of the
21 Airplane by, at the very least, the amount of the liens
22 as stated therein.

23    85. The publication of the Steele Lien and the VIP
24 Lien has made it necessary for BOA to retain counsel to
25 bring this action to cancel the Steele Lien and the VIP
26 Lien.  Therefore, BOA is entitled to recover attorneys'
27 fees and costs incurred in seeking the cancellation of
28 the Steele Lien and the VIP Lien, including, but not

1  limited to, such attorneys' fees and costs incurred in
2  connection with the prosecution of this action.
3  　　86. Furthermore, the publication and continued
4  publication of the Steele Lien and the VIP Lien was
5  motivated by oppression, or fraud and malice on the part
6  of the Defendants in that the Steele Lien and the VIP
7  Lien are without merit as a matter of law.  Therefore,
8  the awarding of punitive damages is justified.
9  　　**WHEREFORE**, BOA prays for judgment as follows:
10  **On The First Claim for Relief**
11  　　1.  For a judgment that the Steele Lien against the
12  Airplane filed with the FAA on April 25, 2013 in favor
13  of Steele Aviation is ineffective, invalid and without
14  force or effect as a matter of law and should be
15  removed, terminated or otherwise withdrawn forthwith;
16  　　2.  For a judgment that the VIP Lien against the
17  Airplane filed with the FAA on April 25, 2013 in favor
18  of VIP is ineffective, invalid and without force or
19  effect as a matter of law and should be removed,
20  terminated or otherwise withdrawn forthwith;
21  　　3.  For injunctive relief:
22  　　　　　(a)  Ordering Steele Aviation and N.Steele to
23  　　　　　　　　release or otherwise withdraw the Steele
24  　　　　　　　　Lien forthwith;
25  　　　　　(b)  Ordering VIP and Cambe to release or
26  　　　　　　　　otherwise withdraw the VIP Lien forthwith;
27  　　　　　(c)  Requiring Steele Aviation and N.Steele to
28  　　　　　　　　indemnify and hold BOA harmless from any

```
 1                    damages caused to BOA or the Airplane

 2

 3                    resulting from the filing of the Steele

 4                    Lien;

 5           (d)  Requiring VIP and Cambe to indemnify and

 6                hold BOA harmless from any damages caused

 7                to BOA or the Airplane resulting from the

 8                filing of the VIP Lien;
```

**On The Second Claim For Relief**

```
10      4.   For restitution to BOA and disgorgement of
11  benefits in an amount according to proof at trial;
12      5.   For an order enjoining the Defendants as
13  requested in Number 3 above in this prayer of relief;
14      6.   For punitive damages against VIP and Cambe in
15  an amount sufficient to punish VIP and Cambe;
16      7.   For BOA's reasonable attorneys' fees;
```

**On The Third Claim for Relief**

```
18      8.   For general damages in an amount according to
19  proof at trial;
20      9.   For special damages in an amount according to
21  proof at trial;
22      10.  For punitive damages in an amount according to
23  proof at trial;
```

**On The Fourth Claim for Relief**

```
25      11.  For general damages in an amount according to
26  proof at trial;
```

BUCHALTER NEMER

15596260.1

1    12. For special damages in an amount according to
2  proof at trial;

3    13. For punitive damages in an amount according to
4  proof at trial;

5  **On The Fifth Claim for Relief**

6    14. For general damages in an amount according to
7  proof at trial;

8    15. For special damages in an amount according to
9  proof at trial;

10 **On The Sixth Claim for Relief**

11    16. For a declaration:

12        (a)  That BOA is entitled to immediate
13             possession of the Missing Log Books and
14             that Steele Aviation, N.Steele, VIP and
15             Cambe have no right to possession thereof;

16        (b)  That the Steele Lien filed against the
17             Airplane by Steele Aviation and N.Steele is
18             ineffective, invalid and without force and
19             effect and should be withdrawn, terminated
20             or otherwise released on a forthwith basis;

21        (c)  That the VIP Lien filed against the
22             Airplane by VIP and Cambe is ineffective,
23             invalid and without force and effect and
24             should be withdrawn, terminated or
25             otherwise released on a forthwith basis.

26

27

28

**On The Seventh Claim for Relief**

17. For general damages in an amount according to proof at trial resulting from the conversion of BOA's Missing Log Books;

18. For special damages in an amount according to proof at trial;

19. For punitive damages in an amount according to proof at trial;

20. For BOA's reasonable attorneys' fees;

**On The Eighth Claim for Relief**

21. That the Defendants, and each of them, deliver and relinquish possession of the Missing Log Books to BOA and, in the event that the same cannot be returned, that BOA recover judgment against the Defendants in an amount according to proof at trial;

**On The Ninth Claim for Relief**

22. For general damages in an amount according to proof at trial;

23. For special damages in an amount according to proof at trial;

24. For punitive damages in an amount according to proof at trial;

**On All Claims for Relief**

25. For costs of suit incurred herein;

26. For such further legal and equitable relief as this Court deems proper.

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES

**COMPLAINT**

15596260.1

1  DATED:   January 28, 2014   BUCHALTER NEMER
                               A Professional Corporation
2

3                              By: _____
4                                  MARK SCOTT, ESQ.
                                   Attorneys for Plaintiff
5                                  Bank of America, N.A., a
                                   National Banking
6                                  Association

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

15596260.1

EXHIBIT 1

I hereby certify this is a true
and exact copy of the original.

Insured Aircraft Title Service, Inc.

Above space for FAA Use Only

Bank of America, N.A.
Mail Code: DE5-011-01-02
655 Paper Mill Road
Wilmington, DE 19884

**Bank of America** ⫸ 1 2

### AIRCRAFT SECURITY AGREEMENT (COMMERCIAL)

CONVEYANCE RECORDED

THIS AIRCRAFT SECURITY AGREEMENT (COMMERCIAL) (the "Agreement"),

is made on this 24th day of October, 2007         between the following Borrower(s) and Co-Borrower(s): 2007 DEC 10  AM 4 25
The Zaken Corporation

whose respective address(es) 20700 Plummer St
            CHATSWORTH, CA 91311

FEDERAL AVIATION
ADMINISTRATION

as set forth beneath their respective signatures at the end of this Agreement ("Debtor") and Bank of America, N.A., a national bank,
655 Paper Mill Road, Wilmington, DE 19884 ("Bank").

073231154011
$5.00  11/19/2007

**RECITALS:**

**(A) The Note.** Debtor is indebted to Bank under a certain aircraft commercial note (the "Note").

**(B) What is Secured.** This Agreement secures the payment of: (1) the Note; (2) all costs and expenses incurred in the collection and enforcement of Bank's rights under the Note and this Agreement (collectively, the "Loan Documents"); (3) all future advances made by Bank for taxes, levies, insurance and repairs to or maintenance of the Aircraft; (4) all money advanced by Bank to fund the loan to or for the account of Debtor or the future obligations of Debtor under the Note and any advances by Bank to preserve its interests under this Agreement; and (5) interest on any such Bank advances as may be payable to Bank (collectively, the "Obligations").

**(C) Consideration.** The consideration for the Note and this Agreement is the disbursement of the loan proceeds. To the extent that a certificate of deposit, bank account or investment securities are pledged with Bank as additional collateral, a separate security agreement will be used for such items.

**(D) (1) The Collateral.** Bank's collateral (sometimes collectively called "Collateral") will be a security interest ("Security Interest") in the aircraft described below (the "Aircraft") and in any engines, motors, propellers, avionics, logbooks and other records, appliances, appurtenances, attachments, parts and equipment now forming part of the Aircraft or added to it later or, if not a part of, used in connection with the Aircraft. Substitutions, replacements and insurance proceeds will also be part of the Collateral. If Debtor leases or rents the Aircraft, Bank's Security Interest will extend to all rent due or to become due to Debtor from lease or rental use of the Aircraft. At Bank's request, Debtor will sign a more detailed written pledge or assignment of such rentals. If the primary use of the Aircraft changes from use by Debtor in Debtor's own business to lease or rental to others, Debtor must first notify Bank in writing and receive Bank's written approval. If execution of this Agreement was a condition of approving lease or rental as the primary use of the Aircraft, this Agreement shall supersede any prior security agreement covering the Aircraft in favor of Bank. Any commercial guaranty, letter of credit or other commercial security given by any person to Bank as security for the specific Obligations of Debtor under the Note or this Agreement or for other commercial obligations of Debtor generally shall also be deemed to be Collateral for this loan. Debtor understands that Bank will treat this loan as a commercial loan from the inception of the loan, even if Debtor's use of the Aircraft changes from business to personal recreational use after the closing.

**(2) Additional Collateral.** (Describe, if any, but if space is inadequate, list on Schedule A hereto):

Commercial Aircraft Security Agreement                    Page 1 of 8                    Date Printed:  10/25/2007
08-58-1519 NSBW (04-06)                                                                                    12947066

Credit to IATS,

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2007 NOV 19 AM 11 27
OKLAHOMA CITY
OKLAHOMA

**(E) Perfection of Security Interest. (1) Federal.** Bank will perfect its Security Interest in the Aircraft and any engines having a rated horsepower of 550 or more and all items now or hereafter forming part of the Aircraft by filing this Agreement with the Federal Aviation Administration ("FAA"); and the Aircraft is certified to transport at least 8 people, or cargo in excess of 2750 kilograms, or if the engines have at least 1750 lbs of thrust or at least 550 rate take-off shaft horsepower, by filing a Registration of the interests created hereby on the designated form with the International Registry. If spare parts may be covered by an FAA filing of this Agreement, they also will be deemed covered thereby if set aside for the Aircraft. If spare parts cannot be so covered, they are covered by subsection (2) below.

**(2) State.** Bank may perfect its Security Interest in any logbooks, engines having a rated horsepower of less than 550, parts identified for use on the Aircraft, and any other Collateral not covered by (E)(1) above by filing UCC-1 Financing Statement(s) with the appropriate filing offices.

## TERMS OF AGREEMENT

### 1. DESCRIPTION OF AIRCRAFT/ENGINES

| Manufacturer | Model | Serial Number | New/Used | FAA Number |
|---|---|---|---|---|
| beech | king air b200 | BB-1130 | Used | N209WC |

Avionics (If space is inadequate, list on Schedule A hereto): _____
_____.

| Engine Manufacturer | Engine Serial Number | Propeller Manufacturer | Propeller Serial Number |
|---|---|---|---|
|  |  |  |  |

**2. PERMANENT BASE OF AIRCRAFT.** The Aircraft will be permanently based at the following airfield:
_____.

**3. AMOUNTS SECURED.** This Agreement secures payment of the Obligations.

**4. GRANT OF SECURITY.** Debtor grants Bank the Security Interest in the Collateral described in Recital (D) above.

**5. PERFECTION OF SECURITY INTEREST(S).** By signing this Agreement, Debtor agrees that Bank may file this Agreement or a registration or other filing, as the case may be, with the FAA and the International Registry on the Aircraft, if appropriate, on its engine(s), and on any identified spare parts and may file (without Debtor's signature where allowed by law) UCC-1 Financing Statements, as provided in Recital (E) above, with the office of the Secretary of State or equivalent officer of the State(s) in which Debtor or any co-owner is incorporated or formed or primarily reside(s) or as otherwise provided by applicable law.

**6. ASSIGNMENT BY BANK.** Debtor will remain liable for the Obligations, even if Bank gives a third party any interest in Bank's rights under the Note or this Agreement.

**7. RENEWAL OR EXTENSION.** Renewing or extending the Note and this Agreement may affect the time of payment but shall not reduce the amount payable. Charges for the extended period(s) will add to the finance charge payable.

**8. CLEAR TITLE AND CITIZENSHIP OF DEBTOR.** Debtor says that: (a) Debtor owns the Aircraft and any related Collateral listed above free and clear of the ownership interest(s), security interests, liens and encumbrances of anyone else, and (b) any Debtor having an ownership interest in the Aircraft is a citizen or resident alien of the United States.

Page 33   Exhibit   1

9.   **DEBTOR'S PROMISES:** Debtor promises that: **(A) Lawful Use** - Debtor will use the Aircraft at all times in accordance with applicable federal, state and local laws, regulations and rulings.  Debtor will also comply with all requirements of Debtor's Aircraft insurance policy.

**(B) Geographic Scope of Use** - The Aircraft will not be flown or taken outside of the continental United States without the prior written permission of Bank upon proof of adequate insurance for such use and pilot familiar with the flight route(s).  International flight may require special insurance.

**(C) Safe Storage and Use.**  Debtor will store the Aircraft safely and operate it or cause it to be operated safely.  The Aircraft will be used and maintained in accordance with (check applicable box):   ☐ FAR 91   ☐ FAR 135   ☐ Other FAR (Specify)_____.

**(D) Pilot.**  Any person who pilots the Aircraft must have a current FAA certificate for such an aircraft and must meet the minimum qualifications for operating the Aircraft required by the insurer of the Aircraft.  Debtor will furnish proof of such qualifications, if requested by Bank.

**(E) No Sale of Aircraft.**  Until the Note is satisfied, Debtor will not sell or dispose of the Aircraft or of any fractional or other interest in the Aircraft.

**(F) No Other Security Interests.**  Debtor will not give anyone other than Bank a security interest in the Aircraft.

**(G) No Liens or Encumbrances.**  Debtor will not allow any liens or encumbrances to exist against the Aircraft and will promptly satisfy and remove any liens or encumbrances on a public record against the Aircraft or of which Debtor otherwise becomes aware.

**(H) No Lease or Rental of Aircraft.**  The Aircraft will not be leased or rented without the prior written approval of Bank.  Such approval is required irrespective of who provides the pilot.  The lease or rental plan must also be approved in writing by Debtor's Aircraft insurer.  Renting may require a different maintenance program under federal law and higher premium cost on Debtor's Aircraft insurance.  Renting to or through a third party, such as a flight training school or a cargo or passenger charter service, also requires prior written approval of Bank and insurer.

**(I) Home Base.**  The Aircraft will be kept at the home airport shown in Section 2 of this Agreement.  Debtor must notify Bank and Debtor's Aircraft insurer if Debtor is going to change the principal base for the Aircraft.  No permanent change shall be made without the prior written consent of Bank and the Aircraft's insurer.

**(J) Maintenance.**

   (i)     **FAA Requirements.**  Maintenance of the Aircraft is Debtor's responsibility.  Debtor must comply with all FAA maintenance and repair directives that apply to Debtor's use of the Aircraft.  Any change of use may cause more demanding maintenance directives to apply, e.g. if the Aircraft is leased or rented out.

   (ii)    **Bank Requirements.**  Bank may require, and Debtor shall provide, a pre-purchase inspection by a FAA-certified mechanic.  Debtor is also responsible for ensuring that the Aircraft at all times meets FAA minimum standards and shall provide all other necessary maintenance during the loan term, including maintaining the hull and all systems in good working order, in order to maintain the value of the Collateral.  If required by Bank, Debtor will enroll the Aircraft in a manufacturer or other reasonably acceptable maintenance tracking program.

   (iii)   **Exceptions.**  The only exceptions to J(i) and (ii) above are for features of the Aircraft that are to be repaired or overhauled after this loan closes and which are noted in Bank's commitment letter to make this loan.  Such repairs or equipment replacement must be completed in accordance with the commitment letter.

   (iv)    **Worn-out Items.**  Items material to safety or the value of the Aircraft that wear out over the course of this loan must be replaced before they become a flight risk, or if not a flight risk, within a reasonable time after they wear out, unless otherwise agreed by Bank, so as to maintain as nearly as possible the collateral value of the Aircraft.

Page____34____Exhibit__(

**(K) Registration.** The Aircraft will at all times be registered with the FAA in Debtor's name for the use to which it is being put and which has been approved by Bank and Debtor's Aircraft insurer.

**(L) Taxes, Fees, Assessments and Charges.** Debtor will pay all taxes, assessments and charges imposed on the Aircraft by any national, state, county or municipal taxing authority or fees of a public or other airport authority. For example, and without limitation, Debtor will pay for any fees imposed on the Aircraft for landing and storage.

**(M) Insurance. (i) Kinds of Coverage.** If required by Bank or applicable law, Debtor shall obtain and maintain (i) public liability insurance (including, without limitation, passenger liability and property damage insurance) with Bank named as additional insured to the extent permitted by applicable law, (ii) all risk aircraft ground and flight hull insurance, fire and extended coverage insurance against all risks of physical damage to or loss of the Aircraft, whether or not such loss occurs in flight, and (iii) such other insurance as Bank may reasonably request. The insurer must be qualified to write such insurance in the state where the Aircraft will be permanently based. Debtor may select the carrier or agent subject to the reasonable approval of Bank. Any carrier must be amenable to service of process in the continental United States, unless otherwise agreed in writing by Bank.

**(ii) Loss Payable Clause; Breach of Warranty Endorsement.** The policy covering physical damage to or loss of the Aircraft shall contain a loss payable clause in favor of Bank, as interests may appear. The insurance policies shall contain breach of warranty endorsements protecting Bank, even if Debtor violates one or more provisions of the policies. While breach of warranty coverage may protect Bank, Debtor's breach of any warranties to the insurer may result in the insurer paying Bank and suing Debtor for the loss. For this reason, Debtor must be familiar with Debtor's policy of insurance and make certain that adequate breach of warranty coverage is obtained. In addition, if Debtor rents out the Aircraft and does not have breach of warranty coverage for Debtor or have the rentee provide breach of warranty coverage for Debtor, Debtor's insurer can pay Bank if the rentee breaches a policy warranty and sue Debtor for the loss leaving Debtor without coverage.

**(iii) Notice of Cancellation.** The insurance policies shall provide for at least thirty (30) days prior written notice of cancellation to Bank.

**(iv) Bank's Power to Collect Proceeds.** Debtor, as principal, hereby appoints Bank as Debtor's attorney-in-fact with all power and authority necessary for Bank in case of an insurance claim to obtain, adjust, settle and cancel such insurance and endorse any loss payment or refund checks, drafts or instruments. Bank may apply the proceeds of any such insurance to the balance owing, whether or not due at the time of such application, and pay any excess proceeds to Debtor. In case of loss or damage to the Aircraft, Bank may intervene in any action between Debtor and any third party, including Debtor's Aircraft insurer, and Debtor agrees to cooperate with Bank in obtaining payment of Bank's interest.

**(v) Amounts of Coverage.** The amount of all-risk property coverage for damage to the Aircraft shall be at least equal to the lesser of the then outstanding balance of the Note or the actual value of the Aircraft. The amount of public liability insurance shall be within limits commonly carried for aircraft of the size and type of the Aircraft for its permitted use(s).

**(vi) Aircraft Usage.** Any application for insurance shall be consistent with the use or uses allowed under the Loan Documents. Debtor must deliver the Aircraft insurance policies or a binder which describes the permitted uses and coverage amounts prior to funding by Bank. Any renewals of insurance or applications for insurance to a new carrier must likewise be consistent with the use(s) permitted under the Loan Documents. No request for lease or rental of the Aircraft will be considered by Bank, unless such use is specifically listed on the Declaration Sheet of the policy or in an endorsement or a binder. Bank may also insist on seeing a copy of the lessee's or rentee's insurance coverage, which must be acceptable to Bank, before approval of such lease or rental.

**(vii) Debtor's Failure to Insure.** In the event Debtor fails to furnish required insurance, Bank may purchase separate individual replacement hull physical damage insurance and, if necessary, public liability insurance and charge Debtor for the premium or rely on Bank's floater policy and not charge Debtor for any part of the floater premium. However, in the latter case, Bank's floater policy carrier may pay Bank and sue Debtor for any loss. If Bank buys separate insurance to be charged to Debtor, Debtor shall be entitled to all notice, cure and refund rights under applicable law. NOTE: In no case will Bank cover Debtor for public liability coverage for Debtor's use of the Aircraft. Such insurance can be obtained only by Debtor or a third party for such party's use or the use of a rentee arranged by such third party. If Debtor fails to furnish insurance as required, Bank will notify Debtor if any replacement insurance is to be added to the balance of the debt required to be paid.

Commercial Aircraft Security Agreement
08-58-1519 NSBW (04-06)
Page 4 of 8
Date Printed:   10/25/2007
12947066

Page ____35____ Exhibit ____1____

**(N) Cape Town Registration.** If applicable, Debtor agrees to become an authorized transaction user entity of the International Registry and to appoint a professional user entity acceptable to Bank for purposes of completing, perfecting, and maintaining the registration of Bank's security interest at the International Registry.

**10. TIMELY PERFORMANCE.** Debtor must pay and perform on time.

**11. SEIZURE.** If the Aircraft is seized by law enforcement authorities for carrying contraband or other involvement in a crime or because the pilot was flying under the influence of alcohol, drugs or other illegal substance, Bank may take possession of the Aircraft from the seizing authority. If the seizing authority is a federal agency which is not able to prove within the federally-required time that Debtor was involved or informed of the unlawful use, Bank will surrender the Aircraft to Debtor at Debtor's request, if such activity is the only then current default. If the seizing authority is a state or local agency under the rules of which Debtor must prove Debtor's non-involvement in the alleged unlawful activity, Bank will return the Aircraft to Debtor when Debtor has established Debtor's non-involvement or been declared a victim by the seizing agency. If a seizing state or local authority has the right to forfeit the Aircraft, irrespective of proof of Debtor's involvement/non-involvement, Bank may elect to pay such release amount as the seizing authority may demand and obtain possession of the Aircraft or abandon its rights to the Aircraft and hold Debtor liable for the then balance of Debtor's Obligations. In any event, Debtor shall be responsible for all of Bank's reasonable expenses in investigating the seizure, obtaining possession of the Aircraft and storing and maintaining it pending a resolution of the dispute, if Bank provides such services.

**12. DEFAULT.** Debtor will be in default under this Agreement if any of the following happens: (a) Debtor fails to pay Bank any Obligations under the Loan Documents when due; (b) a material fact stated or omitted by Debtor in Debtor's credit application or the Loan Documents or in any financial statement given to Bank to obtain credit or subsequently given to Bank hereunder is untrue or tends to make such document misleading; (c) Debtor fails to perform an act specifically required by the Loan Documents, such as (without limitation) providing required insurance, inspection, maintenance and repair, or there is otherwise a default under any of the Loan Documents; (d) a petition in bankruptcy or under any other insolvency, arrangement, reorganization or receivership law is filed by or against Debtor or Debtor enters into an assignment for the benefit of creditors; (e) the Aircraft is seized by a government authority and Bank's security position is in jeopardy; (f) Debtor liquidates, dissolves, or otherwise ceases doing business or allows its corporate or company charter to transact business to lapse; or (g) anything else happens that Bank in good faith may decide impairs its security in the Collateral or this loan or Debtor's ability to pay and perform the loan, such as a garnishment, writ of attachment or execution against any property of Debtor or any guarantor, levy being issued against funds or property of Debtor or any guarantor, or a material adverse change in the financial condition of Borrower or any guarantor.

**13. REMEDIES.** In the event of a default under Section 12, above, **(a) Declare Obligations Due.** Bank, at its option, may declare all or any part of the Obligations immediately due and payable in full, subject to any cure rights which Debtor may have in the state where this remedy is being used. If cure rights exist, Bank will notify Debtor of such rights, as required by applicable law.

**(b) Other Remedies.** Subject to applicable law of the state where a remedy is being used, Bank may use any or all of the following additional remedies:

**(i)** Require Debtor to make the Aircraft available and assemble all related Collateral used in or with the Aircraft, including updated logbooks, at an airbase selected by Bank which is secure and reasonably convenient to both Debtor and Bank. The base designated as the principal location of the Aircraft will suffice, unless such airbase is not at that time a secure place in Bank's reasonable opinion to store the Aircraft.

**(ii)** Take possession of the Collateral with or without judicial process and remove it or make it unusable.

**(iii)** Sell or otherwise dispose of the Collateral AS-IS WHERE-IS by public or private sale on the premises where the Collateral is located or elsewhere, if Bank elects to remove the Aircraft or related additional Collateral.

**(iv)** Collect any money due from third parties for use of or damage to the Collateral.

**(v)** Settle any liens or claims against the Collateral for storage, maintenance, repair, tax or other appropriate charge.

**(vi)** Exercise all remedies provided for in the Note.

**(vii)** If Bank elects to purchase insurance and charge it to Debtor, Debtor will pay for the reasonable cost of such insurance.

**(viii)** If Bank determines that the market for resale of the Aircraft is not favorable, Bank may elect to retain the Aircraft and waive any deficiency or accept a lesser deficiency, in lieu of resale, if allowed by applicable law. In such case, Bank will give Debtor any special written notice required by law, but in any event not less than 21 days notice.

(ix) If Bank elects to resell the Aircraft and related Collateral, Bank will give Debtor the notice and cure rights required in the state where the resale is to take place, but in any event not less than 10 days' notice.

(x) Bank will advise Debtor in its Notice of Resale how Bank plans to advertise the resale and what kind of repair, maintenance or make ready service it will perform prior to offering the Aircraft for resale. If Debtor requests additional resale preparation, Debtor will have to deposit full payment for such service with Bank in advance of the commencement of such work. Bank will decide whether to allow such additional work based on whether the value of such additional work is likely to add to the net resale value of the Aircraft. Any notice to be given following repossession by Bank to Debtor or other parties who sign this Agreement or the Note must be sent by ordinary mail, postage prepaid to the last address(es) Bank has for Debtor and any other obligor on the loan. If Bank elects to send any such notices by additional methods, such as certified mail, return receipt requested, or overnight courier, Debtor will be liable for the cost of such notices as well as for the cost of ordinary mail.

(c) **Personal Property.** (i) **Removal Before Voluntary Surrender.** Before voluntary surrender of the Aircraft to Bank, Debtor will remove all items of personal property not covered by Recital (D)(1) or (2) and, at Bank's request, will sign a statement acknowledging such removal by Debtor. (ii) **Involuntary Repossession.** If Bank repossesses the Aircraft, it will use its best efforts to identify any items of personal property left on or around the Aircraft and tell how Debtor may claim such property. If Debtor, within 45 days after Bank sends such notice, does not physically pick up such items or provide a representative with apparent authority verifiable by Bank to call for such items or provide a prepaid and addressed shipping container for Bank to use to return such items to Debtor, Bank may store such items at Debtor's expense, send them by overnight courier to Debtor and charge Debtor for the cost, or dispose of such items in any way allowed by law.

(d) **Annual Inspection After Repossession.** If, while the Aircraft is being held by Bank pending disposition, the time for an FAA-mandated annual inspection arrives, Bank will consider arranging for the inspection to be made by an FAA-certified mechanic experienced in inspecting, maintaining and repairing similar aircraft, if Debtor deposits with Bank in advance the cost of the inspection. In such case Bank will proceed with repairs indicated by the inspection report to be made by another FAA-certified mechanic, provided Debtor deposits the money with Bank for the repairs in advance. Bank may elect not to make any further repairs if Bank reasonably believes that the cost of such repairs will outweigh the added value of the repairs.

(e) **Expenses.** Debtor shall be liable for and agrees to pay the reasonable expenses incurred by Bank in retaking, flying to a secure airport, storing, inspecting, testing, repairing, improving and reselling the Aircraft and any other Collateral. Debtor shall also be responsible for Bank's court costs and reasonable fees for any attorney not a salaried employee of Bank, if Bank refers this loan for any court or other action to retake possession from Debtor or any third party or for collection of money. These expenses, together with interest, shall, if allowable under applicable law, be added to Debtor's Obligations secured by this Agreement.

(f) **Application of Proceeds.** Any resale proceeds shall be applied first to the expenses of resale, then to the other expenses in 13(e) above, then to late charges, then to accrued and unpaid interest and then to the unpaid principal balance of the Note.

(g) **Surplus.** Any excess of net resale proceeds over then remaining Obligations shall be paid to Debtor.

(h) **Deficiency.** Any deficiency balance still owing after application of net resale proceeds shall be paid by Debtor on demand, unless Debtor has a right to reschedule some or all of the balance under applicable law.

(i) **Remedies Cumulative, Non-Waiver.** Bank may use any remedy or remedies singly or together. Use of one remedy does not stop Bank from using one or more other remedies. Waiver of a remedy on one occasion does not mean that the remedy is waived on another subsequent default.

(j) **Surrender of Aircraft Not A Waiver by Itself.** Surrender of the Aircraft by Debtor shall not release Debtor or any other party liable for the Debtor's Obligations or who joined in granting a security interest in any Collateral for this loan.

14. **GOVERNING LAW.** (a) **Validity.** Except as provided below or as otherwise required by applicable law, the law of Delaware shall govern the validity of this Agreement, without regard to Delaware's conflict of law principles.

(b) **Federal Perfection.** Federal law shall govern the perfection of a security interest in the Aircraft and any engine(s) or parts that the federal filing will cover.

(c) **Remedies.** The law governing the use of any remedy under this Agreement shall be the law of the place where the remedy is to be used.

15. **DEBTOR RESIDENCES, AIRCRAFT LOCATION.** Debtor must notify Bank if any individual Debtor or any other owner of the Aircraft is about to permanently change residence or principal place of business address. Debtor must also notify Bank in advance of any change of name of Debtor, and, in case of a Debtor which is not an individual, any change of name of Debtor or

Page 37   Exhibit 1

change in state of incorporation or formation of Debtor. A change to another state or to a country or territory outside of the continental United States requires 30 days' prior written notice. Other address changes require at least 15 days' prior written notice. If there is more than one owner and each is moving, Debtor must inform Bank of each change of address. Debtor must also notify Bank if the permanent base of the Aircraft is to change. A copy of Debtor's notice must also be sent by Debtor to Debtor's Aircraft insurer.

16. **JOINT AND SEVERAL RESPONSIBILITY.** If this Agreement is executed by more than one Debtor, the obligations of all such Debtors under this Agreement shall be joint and several, except for the obligations of a party signing only as Other Owner to join in granting a Security Interest under Section 4 of this Agreement.

17. **SEVERABILITY.** Invalidity of any provision shall not affect any other provision of this Agreement.

18. **INDEMNITY.** Should any third party make a claim against Bank for any harm from the Aircraft, attributable to Debtor or any third party, and not directly caused or ordered by Bank or its agents, Debtor will promptly either satisfy or settle such claims or indemnify and hold Bank harmless from any liability for such claims, including attorneys' fees and court costs. If Debtor cannot give Bank reasonable assurance of Debtor's ability and resources to defend against any such claim, Bank may control the defense and settle the claim giving such releases as it deems appropriate.

19. **AMENDMENTS.** Neither this Agreement nor any of its provisions may be changed, waived or discharged orally, but only by an instrument in writing signed by the party against whom enforcement of the change, waiver or discharge is sought.

20. **RESCUE.** Should the Aircraft at any time be at risk of loss, such as on notice of approaching storm or flood conditions, Debtor shall take all reasonable steps to preserve and safeguard the Aircraft or authorize the airbase operator with which it is stored to do so. In particular, Debtor shall comply with all conditions of its Aircraft insurance policy relative to insured perils.

21. **NOTICES.** Except as otherwise provided by applicable law, any notice or demand given by Bank to Debtor in connection with this Agreement or the Obligations shall be deemed given and effective upon deposit in the United States mail, postage prepaid, addressed to Debtor at the address of Debtor designated at the beginning of this Agreement and to any other party to this Agreement at such party's last address possessed by Bank. Actual notice of Debtor shall always be effective no matter how given or received.

22. **BOOKS AND RECORDS.** Debtor shall keep books and records showing the income and expenses of the business and records of each flight by the Aircraft as well as maintenance and repair records required to be documented in the Aircraft's logbook(s). Debtor shall obtain and retain all bills for equipment, service, parts, fuel, or other supplies for the Aircraft and proof of payment, whether by check or other medium. Such records shall be available for inspection by Bank on reasonable notice at the principal airbase of the Aircraft or at a reasonably convenient business office of Debtor or Bank at reasonable time(s).

23. **HEADINGS.** Section headings in this Agreement are for convenience only and shall be given no meaning or significance in interpreting this Agreement.

24. **BINDING EFFECT.** The provisions of this Agreement shall be binding upon the legal representatives, successors and assigns of Debtor and Bank's successors and assigns shall have the rights and remedies of Bank under this Agreement.

Commercial Aircraft Security Agreement
08-58-1519 NSBW (04-06)

Page 7 of 8

Date Printed: 10/25/2007
12947066

Page 38 Exhibit 1

**IN WITNESS WHEREOF,** the parties have caused this Agreement to be executed as of the date first above written and Debtor acknowledges receipt of three completed copies of this Argreement, two to return to Bank and one to retain.

| | | | |
|---|---|---|---|
| **Borrower** | The Zaken Corporation | **Secured Party** | |
| Corporate or company officer sign here | | **Bank of America, N.A.** | |
| By | President | By _Er KL Settlement_ | |
| | | Name: | Title: |
| **Co-Borrower1** | | | |
| Name: | Tiran Zaken | | |
| Address: | 20352 Via Galileo | | |
| | PORTER RANCH, CA 91326 | | |

**Co-Borrower2**
Name:
Address:

**Co-Borrower3**
Name:
Address:

**Other Owner** _____

Anyone signing as Other Owner immediately above is not responsible for repaying the debt secured but joins in giving Bank a Security Interest in the Aircraft and to the extent applicable, in any non-aircraft Collateral.

**WITNESS AS TO** Signatures of ☑ Borrower ☑ Co-Borrower1 ☐ Co-Borrower2 ☐ Co-Borrower3 ☐ Other Owner (check applicable boxes)

_____
(Signature)

| |
|---|
| STATE OF _CA_         COUNTY OF _LA_ |
| SIGNED AND SWORN TO (OR AFFIRMED) BEFORE ME |
| ON _11-1- 2007_ BY _TIRAN ZAKEN_ |
| AND BY _SAME_ |
| _Edward F Jus_                My commission expires: _23 NOV 08_ |
| NOTARY PUBLIC |

EDWARD F. ZEIER
Commission # 1528989
Notary Public - California
Los Angeles County
My Comm. Expires Nov 23, 2008

COUNTERPART NOTICE: This Agreement is signed in 2 counterparts. This copy is Counterpart #_____. Only Counterpart #1 may be used to give anyone Bank's rights under or a Security Interest in this Agreement.

FILED WITH F.A.A.
AIRCRAFT REGISTRATION BR.
2007 NOV 19 AM 11 27
OKLAHOMA CITY
OKLAHOMA

FORM APPROVED
OMB No. 2120-0042

UNITED STATES OF AMERICA DEPARTMENT OF TRANSPORTATION
FEDERAL AVIATION ADMINISTRATION-MIKE MONRONEY AERONAUTICAL CENTER
AIRCRAFT REGISTRATION APPLICATION

**CERT. ISSUE DATE**

| UNITED STATES REGISTRATION NUMBER | N 209WC |
|---|---|

AIRCRAFT MANUFACTURER & MODEL
**BEECH B200**

**H DEC 1 1 2007**

AIRCRAFT SERIAL No.
**BB-1130**

FOR FAA USE ONLY

TYPE OF REGISTRATION (Check one box)

☐ 1. Individual  ☐ 2. Partnership  ☒ 3. Corporation  ☐ 4. Co-owner  ☐ 5. Govt.  ☐ 6. Non-Citizen Corporation

NAME OF APPLICANT (Person(s) shown on evidence of ownership. If individual, give last name, first name, and middle initial.)

**THE ZAKEN CORP.**

TELEPHONE NUMBER: (     )

ADDRESS (Permanent mailing address for first applicant listed.) (If P.O. BOX is used, physical address must also be shown.)

Number and street: **20700 PLUMMER ST.**

Rural Route:                        P.O. Box:

| CITY | STATE | ZIP CODE |
|---|---|---|
| CHATSWORTH | CA | 91311 |

**CHECK HERE IF YOU ARE ONLY REPORTING A CHANGE OF ADDRESS**
ATTENTION!  Read the following statement before signing this application.
This portion MUST be completed.

A false or dishonest answer to any question in this application may be grounds for punishment by fine and / or imprisonment (U.S. Code, Title 18, Sec. 1001).

**CERTIFICATION**

I/WE CERTIFY:

(1) That the above aircraft is owned by the undersigned applicant, who is a citizen (including corporations) of the United States.

(For voting trust, give name of trustee: _____ ), or:

CHECK ONE AS APPROPRIATE:

a. ☐ A resident alien, with alien registration (Form I-151 or Form I-551) No. _____

b. ☐ A non-citizen corporation organized and doing business under the laws of (state) _____ and said aircraft is based and primarily used in the United States. Records or flight hours are available for inspection at _____

(2) That the aircraft is not registered under the laws of any foreign country; and

(3) That legal evidence of ownership is attached or has been filed with the Federal Aviation Administration.

NOTE: If executed for co-ownership all applicants must sign. Use reverse side if necessary.

TYPE OR PRINT NAME BELOW SIGNATURE

| SIGNATURE | TITLE | DATE |
|---|---|---|
| TIRAN ZAKEN | PRESIDENT | 11/9/07 |
| SIGNATURE | President | 11/9/07 |
| SIGNATURE | TITLE | DATE |

NOTE: Pending receipt of the Certificate of Aircraft Registration, the aircraft may be operated for a period not in excess of 90 days, during which time the PINK copy of this application must be carried in the aircraft.

AC Form 8050-1 (5/03) (0052-00-628-9007)

FILED WITH FAA
AIRCRAFT REGISTRATION BR

2007 NOV 19  AM 11 27

OKLAHOMA CITY
OKLAHOMA

H 1 1 9 1 1 1

FORM APPROVED
OMB NO. 2120-0042

UNITED STATES OF AMERICA

U. S. DEPARTMENT OF TRANSPORTATION FEDERAL AVIATION ADMINISTRATION

## AIRCRAFT BILL OF SALE

FOR AND IN CONSIDERATION OF $ 1.00 AND
OTHER VALUABLE CONSIDERATION THE
UNDERSIGNED OWNER(S) OF THE FULL LEGAL
AND BENEFICIAL TITLE OF THE AIRCRAFT
DESCRIBED AS FOLLOWS:

CONVEYANCE RECORDED

2007 DEC 10   AM 4 24

FEDERAL AVIATION
ADMINISTRATION

UNITED STATES
REGISTRATION NUMBER N   209WC

AIRCRAFT MANUFACTURER & MODEL
1983 Beech B200

AIRCRAFT SERIAL NO.
BB-1130

DOES THIS   19   DAY OF November, 2007
HEREBY SELL, GRANT, TRANSFER AND
DELIVER ALL RIGHTS, TITLE, AND INTERESTS
IN AND TO SUCH AIRCRAFT UNTO:

Do Not Write In This Block
FOR FAA USE ONLY

| | | |
|---|---|---|
| **PURCHASER** | NAME AND ADDRESS<br>(IF INDIVIDUAL (S), GIVE LAST NAME, FIRST NAME, AND MIDDLE INITIAL.)<br><br>The Zaken Corp.<br>20700 Plummer St.<br>Chatsworth, CA  91311 | 073231154011<br>$5.00  11/19/2007 |
| | DEALER CERTIFICATE  NUMBER | |

AND TO HIS EXECUTORS, ADMINISTRATORS, AND ASSIGNS TO HAVE AND TO HOLD
SINGULARLY THE SAID AIRCRAFT FOREVER, AND WARRANTS THE TITLE THEREOF.

IN TESTIMONY WHEREOF I HAVE SET MY HAND AND SEAL THIS   19   DAY OF November, 2007

| | NAME (S) OF SELLER<br>(TYPED OR PRINTED) | SIGNATURE (S)<br>(IN INK) (IF EXECUTED FOR<br>CO-OWNERSHIP, ALL MUST SIGN.) | TITLE<br>(TYPED OR PRINTED) |
|---|---|---|---|
| **SELLER** | Todd Aire, LLC | *[signature]*<br>Art Rossberg | Manager |
| | | | |
| | | | |

ACKNOWLEDGEMENT (NOT REQUIRED FOR PURPOSES OF FAA RECORDING  HOWEVER, MAY BE REQUIRED
BY LOCAL LAW FOR VALIDITY OF THE INSTRUMENT.)

ORIGINAL: TO FAA

AC Form 8050-2 (9/92) (NSN 0052-00-629-0003) Supersedes Previous Edition

Page   4/3   Edition   1

FILED WITH FAA
AIRCRAFT REGISTRATION BR

2007 NOV 19  AM 11 27

OKLAHOMA CITY
OKLAHOMA

Page 4/4    1

EXHIBIT 2

NOTICE OF LIEN
(PURSUANT TO CHAPTER 19.5 OF THE
CALIFORNIA BUSINESS AND PROFESSIONS CODE

# MECHANIC'S OR MATERIALMAN'S LIEN STATEMENT

STATE OF CALIFORNIA
COUNTY OF *LOS ANGELES*

(1)  STEELE AVIATION, INC., A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF NEVADA, HAS CLAIM AGAINST:

(2)  ZAKEN CORP. FOR THE SUM OF ONE HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED FIFTY-FIVE AND 00/100 DOLLARS ($164,555.00) AND THAT SUCH WORK AND LABOR/MATERIAL/LABOR (MORE PARTICULARLY DESCRIBED BELOW) AND MATERIALS WAS LAST PERFORMED/FURNISHED/PERFORMED OR FURNISHED ON APRIL 22, 2013, AND THAT SUCH WORK AND LABOR/MATERIALS/LABOR AND MATERIALS WAS/WERE PROPERLY PERFORMED/FURNISHED/PERFORMED OR FURNISHED ALL OF WHICH WAS ACCEPTED IN PURSUANCE OF A CONTRACT WITH

(3)  ZAKEN CORP., THE LEGAL OWNER, AND WAS PERFORMED UPON OR FURNISHED FOR AND USED ON THE AIRCRAFT BY ZAKEN CORP. AND DESCRIBED AS FOLLOWS TO-WIT:

| MANUFACTURER | MODEL NUMBER | SERIAL NUMBER | REGISTRATION MARK |
|---|---|---|---|
| BEECHCRAFT | KING AIR B200 | BB-1130 | N418DN |

IN SAID COUNTY AND STATE; THAT SAID SUM IS JUST THE DUE AND UNPAID AND

(1)  STEELE AVIATION, INC. HAS AND CLAIMS A LIEN UPON SAID AIRCRAFT, TO THE SUM OF ONE HUNDRED SIXTY-FOUR THOUSAND FIVE HUNDRED FIFTY-FIVE AND 00/100 DOLLARS ($164,555.00) AS ABOVE SET FORTH, ACCORDING TO THE LAWS OF THE STATE OF CALIFORNIA.

(2)  THE NAME OF THE REGISTERED OWNER OF THE AIRCRAFT IS: ZAKEN CORP., 2610 CONEJO SPECTRUM STREET, THOUSAND OAKS, CA 91320 TELEPHONE: (   )  -       AND SUCH WORK WAS AUTHORIZED BY TIRAN ZAKEN.

DETAILS OF WORK PERFORMED:

AIRCRAFT MAINTENANCE, MANAGEMENT, INSURANCE, FUEL, PILOT FEES, RAMP FEES, CATERING, CLEANING, MAINTENANCE SUBSCRIPTIONS AND HANGAR RENT.

DATED THIS 23rd DAY OF APRIL, 2013.

STEELE AVIATION, INC.
(VENDOR'S FIRM NAME)

I declare under penalty of perjury that the foregoing is true and correct.

NICOLAS STEELE

Nicholas Steele, President & CEO

SEE ATTACHED
NOTARIAL CERTIFICATE

131151116326
$6.00  04/25/2013

Page 45 Exhibit 2

FILED WITH FAA
AIRCRAFT REGISTRATION BR

2013 APR 25   AM 10 53

OKLAHOMA CITY
OKLAHOMA

## CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California        )
County of Los Angeles     )

On **April 23, 2013,** before me, Sally J. Kim, Notary Public, personally appeared **NICOLAS STEELE,** who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

SALLY J. KIM
Comm. #1996582
Notary Public · California
Los Angeles County
Comm. Expires Nov 11, 2016

WITNESS my hand and official seal.

Sally J. Kim, Notary Public

· · · · · · · · · · · · · · · · · · · OPTIONAL SECTION · · · · · · · · · · · · · · · · · · ·

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**
☐INDIVIDUAL
☐CORPORATE OFFICER(S)
_____
TITLE(S)
☐PARTNER(S)   ☐LIMITED
              ☐GENERAL
☐ATTORNEY-IN-FACT
☐TRUSTEE(S)
☐GUARDIAN/CONSERVATOR
☐OTHER: _____
_____
_____

**SIGNER IS REPRESENTING:**
NAME OF PERSON(s) OR ENTITY(IES)
_____
_____

**DESCRIPTION OF ATTACHED DOCUMENT**

**MECHANIC'S OR MATERIALMAN'S LIEN**
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

4/23/13
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

Page 47   Exhibit 2

OKLAHOMA
OKLAHOMA CITY

2013 APR 25   AM 10 53

AIRCRAFT REGISTRATION BR
FILED WITH FAA

EXHIBIT 3

## MECHANIC'S OR MATERIALMAN'S LIEN STATEMENT

*I hereby certify this is a true and exact copy of the original.*

*Rosalie Carter*

*Insured Aircraft Title Service, Inc.*

**STATE OF CALIFORNIA**
**COUNTY OF LOS ANGELES**

VIP JET SERVICES, INC. A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE STATE OF CALIFORNIA THE COUNTY OF LOS ANGELES HAS CLAIM AGAINST ZAKEN CORPORATION FOR THE SUM OF

$82,265.85 EIGHTY-TWO THOUSAND, TWO HUNDRED SIXTY-FIVE AND EIGHTY-FIVE CENTS

AND THAT SUCH WORK, LABOR, MATERIALS AND HANGAR RENTAL WAS LAST PERFORMED AND FURNISHED ON THE 15TH DAY OF MARCH 2013, AND THAT SUCH WORK, LABOR, MATERIALS AND HANGAR RENTAL WERE PROPERLY PERFORMED AND FURNISHED BY VIP JET SERVICES, INC.

THE LEGAL OWNER, AND WAS PERFORMED UPON OR FURNISHED FOR AND USED ON THE AIRCRAFT BY

ZAKEN CORPORATION
2610 CONEJO SPECTRUM ST
THOUSAND OAKS, CA 91320

131151528093
$5.00  04/25/2013

AND DESCRIBED AS FOLLOWS TO-WITH:

| MANUFACTURER | MODEL NUMBER | SERIAL NUMBER | REGISTRATION MARK |
|---|---|---|---|
| BEECHCRAFT | B200 | BB-1130 | N418DN |

IN SAID COUNTY AND STATE; THAT SAID SUM IS JUST THE DUE AND UNPAID AND VIP JET SERVICES, INC. HAS AND CLAIMS A LIEN UPON SAID AIRCRAFT, TO THE SUM OF EIGHTY-TWO THOUSAND, TWO HUNDRED SIXTY-FIVE DOLLARS AND EIGHTY-FIVE CENTS ($82,265.85) AS ABOVE SET FORTH, ACCORDING TO THE LAWS OF THE STATE OF CALIFORNIA, statute of LOS ANGELES COUNTY.

DATED THIS 24th DAY APR 2013.

VIP JET SERVICES

_____ (SIGNATURE)

_____ (TITLE)

DATE OF RELINQUISHMENT _____

## ACKNOWLEDGMENT

STATE OF CALIFORNIA

COUNTY OF Los Angeles

On this 24 day of APRIL 2013, before me, a Notary Public The above named signer did personally appear, said party known to me to be the person who executed the foregoing statement, and acknowledged that he executed same as his act and deed, and if said statement be made in behalf of a corporation, swore that he is duly authorized to execute same in behalf of the corporation. Given under my hand and official seal this same day and year as written above.

CANDY MOJICA
Commission # 1976659
Notary Public - California
Los Angeles County
My Comm. Expires May 26, 2016

MY COMMISSION EXPIRES MAY 26, 2016

_____ (NOTARY PUBLIC)

FILED WITH FAA
AIRCRAFT REGISTRATION BR

2013 APR 25  PM 3 16

OKLAHOMA CITY
OKLAHOMA

DOCUMENT LEVEL ANNOTATIONS

Orig # 6824 ret'd to IATS

EXHIBIT 4

# Steele Aviation, Inc.

Aircraft Sales & Leasing • Private Jet & Helicopter Charter • Asset Management & Consultation
www.SteeleAviation.com

## Aircraft Management Agreement

Aircraft Owner:     Zaken Corp.
                    Attn: Tiran Zaken
                    2610 Conejo Spectrum Street
                    Thousand Oaks, CA 91320

Aircraft Operator:  Steele Aviation, Inc.
                    Attn: Nicolas Steele
                    369 South Doheny Drive
                    Suite 1440
                    Beverly Hills, CA 90210

The above parties agree to the following terms and conditions whereby an aircraft owned by the Aircraft Owner is exclusively and completely controlled and managed by Steele Aviation as described below.

Preliminary

Managed Aircraft:  The term Managed Aircraft used throughout this agreement shall refer specifically to the aircraft listed below. The Aircraft Owner owns the aircraft equipment warranty rights and logbooks.

Make and Model: Beechcraft King Air B200
Serial Number: 1130
FAA Registration: N418DN

Aircraft Operator:  Steele Aviation agrees for the benefit and at the direction of the Aircraft Owner that it shall use, manage, maintain and operate the Managed Aircraft with all due reasonable care and in accordance with applicable insurance coverage and within the standards and guidelines established by the Federal Aviation Administration (FAA) and shall comply with all laws, ordinances or regulations relating to the use, operation and maintenance of the Managed Aircraft.  Steele Aviation shall permit the Managed Aircraft to be used only as contemplated by the manufacturer thereof as specified in the owner's manual and other technical materials regarding the Managed Aircraft provided by the manufacturer to the Owner.

(1)    Steele Aviation shall, at the owner's expense and cost:
(a)    Inspect, maintain, service, repair, overhaul and test the Managed Aircraft by competent, authorized, and certified (as appropriate) personnel, in accordance with the Managed Aircraft's FAA approved maintenance manual and preventive maintenance programs to keep the Managed Aircraft in good operating condition and in conformance with airworthiness certification. This includes, but is not limited to, the following:

Page 52  Exhibit 4

i.      Compliance of any airworthiness directive issued by the FAA or other governmental agency.

ii.     Compliance with any mandatory or recommended service bulletins or letters.

iii.    Compliance with all required inspections as specified by the manufacturer.

iv.     Repair of any aircraft component as specified by the type certificate.

(b)     The Managed Aircraft shall be cleaned, repainted and refurbished as necessary to keep the Managed Aircraft in good cosmetic condition. Steele Aviation will require written approval before performing any paint or interior refurbishment.

(c)     Maintain all aircraft records, logs and materials required by the FAA and make the same available to the Aircraft Owner for inspection at any time should the Aircraft Owner make such a request.

(d)     Comply with all laws of each and every jurisdiction, domestic and foreign, in which the Managed Aircraft may be operated and all rules of the FAA and each and every other legislative, executive, and administrative or judicial body exercising any power or jurisdiction over the Managed Aircraft. Steele Aviation shall maintain the Managed Aircraft in proper condition for operation under such laws and rules including all manufacturers' recommended maintenance.

(2)     Steele Aviation agrees:

(a)     Not to operate or locate the Managed Aircraft or allow it to be operated or located in any area excluded from coverage by any insurance required by the terms of this Agreement.

(b)     Identify and make available professionally qualified pilots who shall be familiar with and licensed to operate the Managed Aircraft. The Aircraft Owner is relying on Steele Aviation's representations as to each pilot's qualifications and experience.

(c)     The Aircraft Owner shall be permitted to remove any pilots by providing written notice to Steele Aviation who shall designate new pilots.

(d)     In the event that a designated pilot is unavailable, Steele Aviation shall supply a pilot qualified in accordance with the terms hereof who Steele Aviation deems, in its sole discretion, to be a suitable replacement provided that such pilot meets the requirements of all insurance policies covering the Managed Aircraft and of the FAA and has not previously been removed by the Aircraft Owner as described above.

Management Fee: The Aircraft Owner hereby agrees to pay Steele Aviation a monthly management fee of US$2,000.00 payable on the first day of each month throughout the term of this Agreement. In the event that this fee is not promptly paid when due, the Aircraft Owner shall pay all costs of enforcement and collection of such fees including reasonable attorney's fees and interest from the date the fees were due at the rate of ten percent (10%) per annum. The Aircraft Owner hereby acknowledges that this fee shall be adjusted on January 1st of each calendar year during the term hereof by the percentage change in the Consumer Price Index for all urban consumers – US city average.

This shall commence when this agreement is signed and shall terminate 30 days after the Managed Aircraft is sold. Should the Aircraft Owner wish to terminate this management agreement at any time prior the aircraft being sold the Aircraft Owner will notify in writing to Steele Aviation of said cancellation. Upon receipt of written cancellation Steele Aviation will notify the Aircraft Owner of the cancellation request and this agreement will be void thirty (30) days after receipt of cancellation. The management fee covers the following functions:

(1)    Aircraft flight scheduling.
(2)    Aircraft maintenance scheduling.
(3)    Flight crew management.
(4)    Flight tracking.
(5)    Coordination with ground transportation.
(6)    Management of catering.

Aircraft Owner Default: In the event that the Aircraft Owner defaults or fails to perform or through their act or omission causes a material default under any of this Agreement then the Aircraft Owner shall forfeit all rights to use the Managed Aircraft until such failure or default has been cured. The Aircraft Owner shall be responsible for costs and payments incurred during any period of default.

Flight Crews: The Aircraft Owner agrees that only Steele Aviation approved pilots shall serve as crew aboard the Managed Aircraft. A fully qualified crew will be dedicated to the Managed Aircraft only after Steele Aviation has performed drug testing, background checks on crew members personal and professional life, and Aircraft Owner's final approval. The crew will support the operation and sale of the Managed Aircraft throughout the period of this Agreement.

Pilot Training: Aircraft Owner is responsible for all training costs for the flight crew including travel and accommodations to and from the training facility due every twelve (12) months. Both pilots will be trained in accordance with Federal Aviation Administration rules as stated in FAR part 61.58.

Steele Aviation will provide:

(1)    Pilots fully qualified under 14 C.F.R. Part 91 for all operations.
(2)    All pilots shall fulfill the experience requirements for insurance.

Pilot Salary: Pilot salaries will be paid by the Aircraft Owner to Steele Aviation on a monthly basis for flight crew services or daily contract pilot pay will be in effect for any and all pilots not on salary.

At the time of signing this Agreement the rates being sought are:

(1)    Captain salary shall be US$4,000.00 per month.
(2)    Daily rate of $400.00 per day.

The pilot salaries shall commence upon signing of this Agreement.

Pilot Limitations and Expenses: Flight crews are subject to the flight and duty time limitations specified by the Federal Aviation Regulations. The Aircraft Owner shall pay for all flight crew expenses including ground transportation and accommodations incurred during the owner's use of the Managed Aircraft. Daily per diems for each flight crew member will be US$60.00 per day domestically and US$90.00 per day internationally. During Owner's use should a duty day extend past fourteen (14) hours the Aircraft Owner will pay each flight crew member US$100.00 per hour for each additional hour over fourteen (14) hours duty. Duty days start sixty (60) minutes before scheduled departure until thirty (30) minutes after the final landing.

Aircraft Insurance: The Aircraft Owner shall pay for hull insurance to cover the value of the Managed Aircraft and liability insurance as described below. The Aircraft Owner shall be responsible for any deductibles associated with incidents or accidents. Steele Aviation shall be listed as named insured with the Aircraft Owner on the insurance policy. Appropriate notices associated with the policy shall be sent to both the Aircraft Owner and Steele Aviation.

(1)     The Aircraft Owner hereby directs and Steele Aviation hereby agrees to arrange for and obtain at the Aircraft Owner's expense, with insurers of recognized reputation, responsibility and having at least an "A" or better rating:

(a)     Aircraft physical damage insurance (excluding war risk coverage and other allied perils coverage) with no deductible with respect to the Managed Aircraft, against loss, theft or damage, extended coverage with respect to any engines or parts while removed from the Managed Aircraft, as defined in the terms and conditions of your aircraft hull and liability policy, for the fair market value of the Managed Aircraft naming the Aircraft Owner, Steele Aviation, and any financial institution holding a lien on the Managed Aircraft as named insured's and named as loss payees with losses payable as their respective interests may appear in the event of an actual or constructive total loss.

(b)     At the Aircraft Owner's direction Steele Aviation shall arrange to procure passenger and third party liability insurance (excluding war risk coverage and other allied perils coverage) for the Managed Aircraft in an amount not less than Ten Million Dollars ($10,000,000) combined single limit liability coverage and shall cause the Aircraft Owner, Steele Aviation, and additional interest parties to be named insured's.

(2)     The Aircraft Owner hereby directs and Steele Aviation hereby agrees to arrange for and obtain as commercially available, at the Aircraft Owner's expense, War Risk and Other Allied Perils Coverage for aircraft physical damage in an amount not less than the fair market value of the Managed Aircraft, passenger liability in an amount not less than Ten Million Dollars ($10,000,000) combined single limit liability coverage and third party liability in an amount not less than Ten Million Dollars ($10,000,000) annual aggregate.

(3)     The Aircraft Owner agrees to accept the proceeds of hull insurance as its sole recourse against Steele Aviation for any loss or damage sustained to the Managed Aircraft whether arising as a result of negligence or otherwise. In addition, the Aircraft Owner agrees to accept the proceeds of such liability insurance provided hereunder as its sole recourse against Steele Aviation in the event of any claim hereunder. All such insurance shall contain a Breach of Warranty Endorsement in favor of the Aircraft Owner and other parties.

(4)     Copies of insurance policies and certificates of insurance shall be furnished to the Aircraft Owner and Steele Aviation promptly upon the execution of this Agreement. Such insurance shall be maintained by Steele Aviation in full force and effect throughout the term hereof and the insurer shall provide the Aircraft Owner thirty (30) days advance notice of cancellation or material alteration.

Aircraft Operation and Maintenance

Aircraft Exclusive Control: The Aircraft Owner agrees that Steele Aviation has complete and exclusive control over the Managed Aircraft. Steele Aviation schedules all flights, crew assignments, crew training, and aircraft maintenance.

Steele Aviation assures:

(1)    Safe operation of the Managed Aircraft.
(2)    High availability and reliability of aircraft and crew.
(3)    Advanced notice of unavailability - scheduled or forecast maintenance, phase inspections, and recurring airworthiness directives.
(4)    Alternate aircraft options should Aircraft Owner's plane not be available.
(5)    Provide scheduling, catering, and support for ground transportation, as appropriate.

Safe Aircraft Operation: Aircraft Owner acknowledges that the Captain has the final authority as to all aircraft flight operations once the Managed Aircraft is dispatched. Some of the factors that may delay or cancel a flight include, but are not limited to:
(1)    Weather - if safety is compromised by adverse weather or conditions below FAA authorized minimums (e.g., fog or low ceilings) then a flight may be delayed.
(2)    Aircraft Airworthiness – if there is any condition of the Managed Aircraft that compromises safety then a flight may be delayed or canceled.
(3)    Other Circumstances – if there are any other conditions or circumstances that prevent a flight from being conducted safely and in accordance with the Federal Aviation Regulations then the flight may be delayed or canceled.

Flight Scheduling: Aircraft Owner will inform Steele Aviation as early as possible of planned use. Since the Managed Aircraft cost is subsidized by revenue producing operations, priority cannot be given to the Aircraft Owner to "bump" a customer Steele Aviation has already booked. The Aircraft Owner shall make a schedule request to Steele Aviation and Steele Aviation will then advise the Aircraft Owner of any scheduling conflict. Steele Aviation will do what it can to make the Managed Aircraft available for any Owner's schedule request but availability is not confirmed. If any scheduling conflict is more than two (2) days in the future the Aircraft Owner has the right to "bump" any Steele Aviation customer scheduled on the Managed Aircraft.

The Aircraft Owner agrees that it shall provide Steele Aviation with the following information for each proposed flight:

(1)    Proposed Departure Point
(2)    Destination(s)
(3)    Date and Time of Departure(s)
(4)    Number of Anticipated Passengers
(5)    Nature and Extent of Luggage (and estimated weights)
(6)    Any Other Pertinent Information relevant to flight operations

Direct Operating Expenses:

The expenses associated with each hour of operation include:

(1)     Fuel
(2)     Maintenance
(3)     Landing & Parking
(4)     Crew Expenses
(5)     In-flight Catering
(6)     Flight Planning
(7)     Weather Services
(8)     Customs/Duties
(9)     Foreign Flight Expenses

Steele Aviation agrees, at the Aircraft Owner's request, to coordinate all ground transportation required by the Aircraft Owner which shall be at the Aircraft Owner's expense.

Fixed Costs: The fixed costs that are paid by the Aircraft Owner to Steele Aviation will be due monthly by the 7th day of each month after receipt of the previous monthly invoice including costs such as but not limited to:

(1)     Hangar
(2)     Computer Weather and Operation Program
(3)     Jeppesen Airway Charts
(4)     Maintenance Manual Revisions
(5)     Fuel
(6)     Landing and parking fees
(7)     Crew travel expenses
(8)     Management fee
(9)     Flight crew salaries
(10)    Miscellaneous fees

Other Fixed Costs:  Other fixed costs are associated with normal wear and the need to upgrade to newer technology, as appropriate.  These are costs associated with maintaining the value of the Managed Aircraft and, in some cases, are required for continued operation, including:
(1)     Aircraft Modernization
(2)     Refurbishing.

Cost of Living Increases:  With the Aircraft Owner's approval adjustments will be made each year to account for the cost of living increases for:
(1)     Pilot Salaries
(2)     Management Fees
(3)     Other expenses and costs identified above.

Unknown or Unforeseen Costs:  The Aircraft Owner is responsible for any unforeseen costs such as penalties and fines not associated with a Steele Aviation flight.

Maintenance:  The Aircraft Owner shall authorize the Aircraft Operator authority to contract with an appropriate FAA approved maintenance facility for the proper maintenance of the Managed Aircraft so that it can be maintained in a safe and airworthy condition. The Aircraft Owner shall be fully responsible for the cost of maintenance.  Steele Aviation shall assure that the following items are maintained properly.

(1)   Compliance with all required phase inspections.
(2)   Compliance with all required aircraft inspections.
(3)   Compliance with all recurring and non-recurring airworthiness directives.
(4)   Repair of all maintenance discrepancies.
(5)   Scheduling the replacement of all life limited components prior to their expiration date.
Steele Aviation shall report all equipment failures, incidents, damage, accidents, or malfunctions involving the Managed Aircraft to the Aircraft Owner. Support will be provided for filing any FAA, DOT, and insurance reports, as required.

Cost Reporting:  Steele Aviation shall provide the Aircraft Owner with a monthly report and breakdown of all costs.

Terms and Conditions

Event of Default:  The Aircraft Owner is considered in default when any of the following events occur:
(1)   The failure of the Aircraft Owner to pay when due the Monthly Management Fee set forth herein including taxes or similar assessments levied or imposed against components with a ten (10) day period of grace after written notice of nonpayment;
(2)   The causing or permitting by the Aircraft Owner, through any of its own acts or failure to act, of any lien, claim or encumbrance to attach to the Managed Aircraft;
(3)   The material breach by the Aircraft Owner of any provision of this Agreement, which material breach shall continue for thirty (30) days after written notice to the Aircraft Owner;
(4)   If the Aircraft Owner shall:
(a)   Admit in writing its inability to pay, or fail to pay, debts generally as they become due;
(b)   File a petition in bankruptcy or a petition to take advantage of any insolvency act or file an answer admitting or failing to deny the material allegations of such petition;
(c)   Make an assignment for the benefit of its creditors;
(d)   Consent to the appointment of, or possession by, a custodian for itself or for the whole or substantially all of its property;
(e)   On a petition in bankruptcy filed against it, be adjudicated, or have an order for relief granted as, a bankrupt; or,
(f)   File a petition or answer seeking reorganization or arrangement or other aid or relief under any bankruptcy or insolvency laws or any other law for the relief of debtors or file an answer admitting, or fail to deny, the material allegations of a petition filed against it for any such relief.
(5)   If a court of competent jurisdiction shall enter an order, judgment or decree appointing, without the consent of the Aircraft Owner, a custodian for Owner or the whole or substantially all of its property, or approving a petition filed against it seeking reorganization or arrangement of the Aircraft Owner under any bankruptcy or insolvency laws or any other law for the relief of debtors, and such order, judgment or decree shall not be vacated or set aside or stayed within sixty (60) days from the date of entry thereof.

Duration:  This Agreement shall commence when this Agreement is signed and shall terminate when either of:

(1)     Thirty (30) days after the Aircraft Owner sells the Managed Aircraft;

(2)     The date the Aircraft Owner elects to cancel this Agreement with at least a thirty (30) day notice; or,

(3)     Upon a final determination that there has been a total loss of the Managed Aircraft.
This Agreement shall, each year, be automatically renewed unless one of the parties notifies the other party of non-renewal at least thirty (30) days, but not more than sixty days, before the end of the one year period in question.

Loss and Damage:  In the event of damage or loss, the following applies.

(1)     In the event of any damage to or loss, theft or destruction of, the Managed Aircraft by any cause whatsoever ("Loss or Damage"), not involving an actual or constructive (i.e., the Managed Aircraft cannot be properly or economically repaired) total loss, all insurance proceeds in respect thereof shall be paid to Aircraft Owner for the repair and restoration of the Managed Aircraft to good repair, condition and working order;

(2)     In the event of an actual or constructive total loss of the Managed Aircraft ("Total Loss"), all insurance proceeds shall be paid to the Aircraft Owner.

Assignment:  This Agreement shall be binding upon the parties hereto, their representatives, successors and assigns. This Agreement shall not be assignable by the Aircraft Owner except to a bank or upon the express written consent of Steele Aviation, which consent shall not be unreasonably withheld. This Agreement shall be assignable upon prior written notice to Steele Aviation by the Aircraft Owner to any entity to which the Aircraft Owner may transfer all or substantially all of its assets and business pursuant to a merger, acquisition, or other such reorganization or to any affiliate of the Aircraft Owner.

Entire Agreement:  The provisions herein constitute the entire Agreement between the parties and no waivers or changes shall be valid unless agreed upon by the parties in writing, signed by or on behalf of them both. Any other Agreements between the parties shall be considered separate and distinct and as if with third parties. This Agreement may be executed in one or more counterparts each of which shall be deemed an original, all of which together shall constitute one and the same Agreement.

Agreement Provisions:  If any one or more of the provisions of this Agreement is invalid, illegal or unenforceable, the remaining provisions of this Agreement shall be unimpaired and the invalid, illegal or unenforceable provision shall be replaced by a mutually acceptable provision, which, being valid, legal and enforceable, comes closest to the intention of the parties underlying the invalid, illegal or unenforceable provision.

California Agreement: This Agreement is made in the State of California in the United States of America and shall be considered performed in, enforced, and shall be construed under, the laws of said State. The parties to this Agreement hereby agree that they are all subject to the jurisdiction of the California Courts and that service of process shall be accomplished using Certified Mail   Return Receipt, addressed to the last known address of the party being served, as to any controversy under or in connection with this Agreement.

Arbitration: Either party may elect, with notice to the other party, to submit any controversy under or in connection with this agreement to the American Arbitration Association in California. On receipt of such notice, the other party may not thereafter submit the matter to any court. A Judgment, Award or Order, etc. of the Association may be entered in any court of competent jurisdiction as to subject matter and/or dollar amount (if applicable).

Notices: Any notice, request or other communication to either party by the other here-under shall be made in writing and shall be deemed given on the earlier of the date:

(1)      Personally delivered with receipt acknowledged,

(2)      Faxed at time of transmission by electronic facsimile transmission equipment, which equipment shall furnish written confirmation of successful and completed transmission of all pages without error in transmission, or

(3)      The next business day after delivered to a reputable overnight courier at the address set forth in the first paragraph of this Agreement and on the signature page, together with a copy to any addressee as may be designated by a party by notice hereunder.

The address of a party to which notices or copies of notices are to be given may be changed from time to time by such party by written notice to the other party.

All notices required by this Agreement shall be Certified Mail – Return Receipt and be considered complete upon mailing (regardless of whether or not the Receipt is returned).

Certification

By signing below, Aircraft Owner acknowledges that he or she has read, understands, recei copy of and agrees to the terms of this Agreement.

Aircraft Owner Signature

Legal Full Name Tiran Zaken

Company Zaken Corp

Date 4/13/11

Address 2610 Conejo Spectrum St

Thousand Oaks, CA, 91320


Telephone 805 262 6700

Fax

E-mail

Agreed and accepted by Steele Aviation, Inc.

Steele Aviation Signature

Nicolas Steele

Legal Full Name of person signing on behalf of Steele Aviation and position in company

Date 4/13/11

Steele Aviation, Inc.
369 South Doheny Drive Suite 1440
Beverly Hills, California 90210
United States of America
Phone: 323 874 1610
Fax: 818 474 7685
Email: ops@steeleaviation.com

Page 61 Exhibit 4

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____ Percy Anderson _____ and the assigned Magistrate Judge is _____ Victor B. Kenton _____ .

The case number on all documents filed with the Court should read as follows:

## CV14-00660 PA (VBKx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____ January 28, 2014 _____
Date

By _____ Lori Wagers _____
Deputy Clerk

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| | | |
|---|---|---|
| [x] Western Division | [ ] Southern Division | [ ] Eastern Division |
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

AO 440 (Rev. 06/12) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the
Central District of California

| | | |
|---|---|---|
| BANK OF AMERICA, N.A., a National Banking Association, | ) ) ) ) | |
| *Plaintiff(s)* | ) ) ) | Civil Action No.    **CV14-00660 PA (VBKx)** |
| v. | ) | |
| STEELE AVIATION, INC., a Nevada Corporation; NICOLAS STEELE, an individual also known as Nick Steele and as Nicholas Steele; VIP JET SERVICES, INC., a Delaware Corporation also known as V.I.P. Jet Services; DEAN CAMBE, an individual also known as Dean R. Cambe and as Dean R. Cambe Sr., | ) ) ) ) ) ) | |
| *Defendant(s)* | ) | |

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Buchalter Nemer
Mark M. Scott, Esq. (State Bar No. 138569)
18400 Von Karman Avenue, Suite 800
Irvine, California 92612

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date:  ____1-28-14____      ____Lori Wagers____
                                          *Signature of Clerk or Deputy Clerk*

                                          LORI WAGERS



American LegalNet, Inc.
www.FormsWorkFlow.com

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____

☐ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

☐ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because _____ ; or

☐ Other *(specify):*



My fees are $ _____ for travel and $ _____ for services, for a total of $ 0.00 _____

I declare under penalty of perjury that this information is true.


Date: _____                _____
                                                              *Server's signature*

                                               _____
                                                              *Printed name and title*


                                               _____
                                                              *Server's address*

Additional information regarding attempted service, etc:


American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☐ )

BANK OF AMERICA, N.A., a National Banking Association,

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

STEELE AVIATION, INC., a Nevada Corporation; NICOLAS STEELE, an individual also known as Nick Steele and as Nicholas Steele; VIP JET SERVICES, INC., a Delaware Corporation also known as V.I.P. Jet Services; DEAN CAMBE, an individual also known as Dean R. Cambe and as Dean R. Cambe Sr.,

**(b)** County of Residence of First Listed Plaintiff Mecklenburg, N.C.
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

**(c)** Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

Mark M. Scott
Buchalter Nemer
18400 Von Karman Avenue
Irvine, California 92612
(949) 760-1121

Attorneys (*Firm Name, Address and Telephone Number*) If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1. U.S. Government Plaintiff

☐ 3. Federal Question (U.S. Government Not a Party)

☐ 2. U.S. Government Defendant

☒ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1. Original Proceeding
☐ 2. Removed from State Court
☐ 3. Remanded from Appellate Court
☐ 4. Reinstated or Reopened
☐ 5. Transferred from Another District (Specify)
☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No   (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No     ☒ **MONEY DEMANDED IN COMPLAINT:** $ According to proof

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. Sections 1332 and 1348

**VII. NATURE OF SUIT** (Place an X in one box only).

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/ Accomodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**     Case Number:     CV14-00660 PA (VBKx)

CV-71 (11/13)                    CIVIL COVER SHEET                    Page 1 of 3

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**VIII. VENUE:** Your answers to the questions below will determine the division of the Court to which this case will most likely be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| Question A: Was this case removed from state court? | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| ☐ Yes  ☒ No<br><br>If "no," go to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| Question B: Is the United States, or one of its agencies or employees, a party to this action? | If the United States, or one of its agencies or employees, is a party, is it: | | INITIAL DIVISION IN CACD IS: |
|---|---|---|---|
| | A PLAINTIFF?<br><br>Then check the box below for the county in which the majority of DEFENDANTS reside. | A DEFENDANT?<br><br>Then check the box below for the county in which the majority of PLAINTIFFS reside. | |
| ☐ Yes  ☒ No<br><br>If "no," go to Question C. If "yes," check the box to the right that applies, enter the corresponding division in response to Question D, below, and skip to Section IX. | ☐ Los Angeles | ☐ Los Angeles | Western |
| | ☐ Ventura, Santa Barbara, or San Luis Obispo | ☐ Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | ☐ Riverside or San Bernardino | Eastern |
| | ☐ Other | ☐ Other | Western |

| Question C: Location of plaintiffs, defendants, and claims? (Make only one selection per row) | A.<br>Los Angeles County | B.<br>Ventura, Santa Barbara, or San Luis Obispo Counties | C.<br>Orange County | D.<br>Riverside or San Bernardino Counties | E.<br>Outside the Central District of California | F.<br>Other |
|---|---|---|---|---|---|---|
| Indicate the location in which a majority of plaintiffs reside: | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |
| Indicate the location in which a majority of defendants reside: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| Indicate the location in which a majority of claims arose: | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |

**C.1. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column C

☐ only 1 answer in Column C and no answers in Column D

Your case will initially be assigned to the
SOUTHERN DIVISION.
Enter "Southern" in response to Question D, below.

If none applies, answer question C2 to the right. ➡

**C.2. Is either of the following true? If so, check the one that applies:**

☐ 2 or more answers in Column D

☐ only 1 answer in Column D and no answers in Column C

Your case will initially be assigned to the
EASTERN DIVISION.
Enter "Eastern" in response to Question D, below.

If none applies, go to the box below. ⬇

Your case will initially be assigned to the
WESTERN DIVISION.
Enter "Western" in response to Question D below.

| Question D: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, or C above: ➡ | Western |

American LegalNet, Inc.
www.FormsWorkFlow.com

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES**: Has this action been previously filed **in this court** and dismissed, remanded or closed?   ☒ NO   ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES**: Have any cases been previously filed **in this court** that are related to the present case?   ☒ NO   ☐ YES

If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)   ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):** _Mivvnff_                    DATE:  January 28, 2014

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

American LegalNet, Inc.